**Mary C. MILTENBERGER et al.**

v.

**The CHESAPEAKE & OHIO RAILWAY COMPANY et al.**

**Misc. No. 856.**

United States Court of Appeals, Fourth Circuit.

Oct. 20, 1971.

Leonard J. Kerpelman, Baltimore, Md., for plaintiffs.

H. Russell Smouse, Towson, Md., and Thomas Samuel, Baltimore, Md., for defendants.

## MEMORANDUM OPINION AND ORDER

SOBELOFF, Senior Circuit Judge:

Plaintiffs began this action by filing in the District Court a "Complaint for a Writ of Mandamus, for a Temporary Injunction Ex Parte, and for Other Relief."

Injunction was prayed against the Chesapeake & Ohio Railway Company and its subsidiary, the Baltimore & Ohio Railroad Company, to halt their proposed demolition of the Queen City Station and Hotel in Cumberland, Maryland, which is owned by the latter railroad.[1] After a hearing at which all of the parties were present and participated, Judge Thomsen, sitting as Chambers Judge, denied the requested preliminary relief on October 8, 1971.[2] That afternoon plaintiffs came before me as a single Circuit Judge with an oral request, variously denominated, but which I shall treat as an application for an injunction pending appeal, as provided in Rule 8 of the Federal Rules of Appellate Procedure. The parties were fully heard on their respective contentions. Counsel for the defendants entered into a gentlemen's agreement to take no further action to demolish the building un-

[1]. Plaintiffs sought mandamus against the Attorney General of the United States to require him to exercise the discretion vested in him by the Rail Passenger Service Act of 1970, 45 U.S.C. § 547, and decide whether or not to seek an injunction against the railroad's abandonment of the Queen City Station and Hotel as a passenger facility. This aspect of the case was reserved in the Judge's decision, and therefore is not ripe for appeal.

[2]. An ex parte injunction had been issued in the Circuit Court of Baltimore City, but, after a hearing on the merits, was dissolved by Judge Cardin of that court the day of the hearing in the District Court.

til I had an opportunity to obtain and read a transcript of the District Court proceedings. The transcript was furnished me the following Monday.

The Queen City Hotel is unquestionably an historic landmark and has been so designated in the National Register of Historic Places, but Cumberland's city officials and the local community are sharply divided over the question of the building's preservation. Emotions of extraordinary intensity have been generated by the controversy. The plaintiffs are firm in their resolve to preserve the structure, but, as Judge Thomsen found, they lack the means to accomplish their objective, which involves not only the cost of acquisition from the railroads, but the vastly greater expense of restoration. The Mayor opposes demolition, but a majority of his colleagues on the City Council strongly disagree.

The county government originally applied for a grant in the amount of $100,000 from the Department of Housing and Urban Development in order to match a state grant of an equal amount. The Department agreed to make this grant but the County Commissioners have now changed their minds and say they will refuse to accept the money or to cooperate. The new position of the County Commissioners jeopardizes both the H.U.D. grant and that of the state, for each is contingent on the other. Apparently the Commissioners fear that if the property were purchased by or for the county, it would have a white elephant on its hands. Even in the unlikely event of adequate restoration funds being supplied from some source not now in sight, the county is apparently unwilling to assume the not inconsiderable burden of maintenance.

The defendant railroads take the position that, as private property owners, they have an absolute right to tear down the hotel and cannot be compelled to sell except by condemnation proceedings, obviously not contemplated by the state or local officials. Moreover, the Cumberland City Council has accepted a Fire Department report that the hotel is a fire hazard and the Council ordered the railroads to demolish it within 120 days. That period expired October 13, 1971. This order of the City Council, as well as the possible liability that the railroads would face in the event of the hotel's being destroyed by fire, form the basis of defendants' opposition to any injunction pending appeal.

Plaintiffs urge postponement of the destruction of the hotel to afford them a further opportunity to raise funds to acquire and restore the building. They point out that the Maryland General Assembly, at its 1971 session, allocated $100,000 from a larger bond issue to match funds the United States may supply. Even should both state and federal matching funds be forthcoming, this aggregate sum of $200,000 is far short of what will be required for restoration, which is $3,000,000 to $7,000,000, according to the defendants, and $2,600,000, according to an estimate by one of plaintiffs' witnesses.[3]

Judge Thomsen concluded there was not enough money reasonably in prospect to accomplish the restoration. The unlikelihood of the venture's success is a legitimate consideration for a judge entertaining an application for a preliminary injunction.[4]

3. This witness, an employee of H.U.D., evidently genuinely desirous of assisting the purchase and restoration, suggested a less expensive plan. In an effort to scale down his own estimate of $2,600,000 for complete restoration, he testified that a partial restoration—sufficient to bring the hotel into compliance with the Cumberland City fire laws and to restore the exterior and portions of the interior—might be effected for $1,000,000. Even this more limited sum is five times the amount tentatively available.

4. Indeed, subsequent events have spawned new difficulties. On Tuesday evening, October 12, 1971, at a meeting of the state Board of Public Works, the $100,000 matching contribution of the state was reaffirmed, but with a stern warning by the members of the Capital Expenditures Subcommittee of the Maryland Legislative

■■ For me, a no less pertinent inquiry is whether there is sufficient likelihood of a successful appeal to warrant intrusion upon the railroads' plans. The Fourth Circuit has held that on an application for a stay or injunction pending appeal, one of the considerations should be whether the petitioner has made a strong showing that he is likely to prevail on the merits of his appeal. First-Citizens Bank and Trust Co. v. Camp, 4 Cir., 432 F.2d 481 (1970); Airport Comm'n of Forsyth County, N. C. v. C. A. B., 4 Cir., 296 F.2d 95 (1961). Viewing plaintiffs' cause most sympathetically, I still perceive no substantial prospect for their eventual success in the appellate court.

■ Plaintiffs seek to invoke two federal statutes, the National Historic Preservation Act of 1966 ("NHPA"), 16 U.S.C. §§ 470 et seq., and the National Environmental Policy Act of 1970 ("NEPA"), 42 U.S.C. §§ 4321 et seq., in support of their effort to preserve the structure.[5] Plaintiffs contend that the National Environmental Policy Act, 42 U.S.C. § 4332, prohibits razing the hotel unless there is no feasible alternative. The National Historic Preservation Act, 16 U.S.C. § 470f, is similarly invoked as requiring, prior to the expenditure of federal funds in the demolition of an historic structure, (1) that consideration be given to the cultural loss involved, and (2) that an opportunity be afforded the Advisory Council on Historic Preservation to comment on the undertaking.

A reading of these two congressional enactments discloses that they are in terms directed to none but federal agencies. No federal agency is involved in the contemplated demolition of the hotel.[6] Thus, reliance upon these two federal statutes seems misplaced.

In partial response to the argument that the two statutes apply to federal agencies only, the plaintiffs assert that the defendants' passenger service, like that of all railroads, is now under federal control. It is true that the Rail Passenger Service Act of 1970 provides for the assumption and subsidization of intercity rail passenger service by the National Railroad Passenger Corporation ("AMTRAK"), 45 U.S.C. §§ 561, 601–602. It must be noted, however, that the Queen City Hotel was abandoned by the railroads as a passenger facility long before the enactment of the AMTRAK legislation. Thus it would appear that the hotel does not fall within the jurisdiction of AMTRAK but is rather a private parcel of land owned by the railroads, now unrelated to any rail passenger service.

Even assuming that AMTRAK has jurisdiction to prevent abandonment of a railroad hotel facility, the statutory language cannot be construed as bringing AMTRAK within the purview of NHPA and NEPA. Were plaintiffs' contention to be adopted, any private corporation subject to governmental aid would be included in the definition of "federal agency." This is an impossible

---

Council that additional appropriations would in no event be forthcoming from the state. The preservationists offered an alternative suggestion, that the Queen City Hotel be included in the existing Chesapeake and Ohio National Historical Park, but it would take at least many months for such a proposal to achieve favorable administrative action. Holding matters in abeyance under injunctive order for such a long period would be out of the question.

5. Only the first of these statutes was adverted to in the complaint, but in oral agument in the District Court and before me plaintiffs rely on both, and since the

District Judge authorized the plaintiffs to make the necessary amendment, I will consider both statutes.

6. Plaintiffs have no complaint against H.U.D., the only federal agency even remotely concerned. It has been cooperative by approving the Allegheny County's application for a grant of $100,000. Presumably H.U.D. would adhere to its grant to the Allegheny County Commissioners, if the latter had not altered their position and repudiated H.U.D.'s tendered subvention. Certainly H.U.D. has not violated either of the two statutes.

interpretation, for the AMTRAK statute itself declares explicitly that the corporation created therein is not "an agency or establishment of the United States Government," 45 U.S.C. § 541.[7]

One cannot refrain from admiring the good motives of the plaintiffs. But the court cannot tie the defendants' hands while these good citizens pursue what is, unfortunately, destined to be a will-o'-the wisp. A contract for demolition was awarded and the contractor began his work before the matter reached the courts. He has since been standing by, suffering some damage for which the railroads will be called upon to reimburse him. Further delay will result in further damage. The plaintiffs have no money and say they cannot furnish an appeal bond.

The railroads, for tax reasons, are unwilling to sell the hotel property to a non-governmental buyer. Neither the city of Cumberland, Allegheny County nor the State is willing to accept or hold title. H.U.D.'s grant is without a taker. As a judge, I am confined by rules of law. I am not free to command defendants to be generous or public spirited and not to obstruct what might be considered a meritorious undertaking.

Last week Lt. Governor Blair Lee requested me and I agreed to defer decision because the Cumberland City Council was scheduled to meet October 19 to consider whether it would consent to serve as the necessary public body to receive the H.U.D. and the State of Maryland matching grants. This morning I was advised that the Council did meet last night and by a vote of 3 to 2 decided to adhere to its stance in opposition to the purchase and restoration of the Cumberland hotel.

For the reasons, both legal and practical, outlined above, it is my conclusion that the plaintiffs have failed to establish any ground for exercising discretion in favor of an injunction pending appeal.

The application is therefore denied.

---

7. This congressional categorization mus⎯ be honored despite the fact that AMTRAK is governed by a board consisting of fifteen directors, eight of whom are appointed by the President, the others elected by stockholders. 45 U.S.C. § 543.