Maurice BAKER et al., Plaintiffs,

v.

CENTRAL INTELLIGENCE AGENCY et al., Defendants.

Civ. A. No. 76–516.

United States District Court, District of Columbia.

Jan. 4, 1977.

Marion Edwyn Harrison, Harrison, Lucey & Sagle, Washington, D. C., for plaintiff Maurice Baker.

Paul F. Figley, Civ. Div., Dept. of Justice, Washington, D. C., for defendant Central Intelligence Agency.

## MEMORANDUM AND ORDER

FLANNERY, District Judge.

This matter comes before the court on the parties' cross motions for summary judgment. Plaintiffs in this action seek certain documents withheld by defendant agency pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Former employees of the CIA, plaintiffs seek disclosure of certain portions of the CIA's Headquarters Regulations concerning hiring or discharging of employees and vacancy notices of the CIA relating to job descriptions for which plaintiffs potentially could qualify.[1] Defendants have withheld the documents at issue on the basis of exemptions (b)(3) and (b)(2). The validity of these claimed exemptions is before the court now for purposes of the cross motions for summary judgment.

## (I) *Exemption (b)(3)*

■ Defendants contend that the documents at issue are exempted from disclosure by 5 U.S.C. § 552(b)(3), which provides:

This section does not apply to matters that are . . . specifically exempted from disclosure by statute . . . .

Defendants argue that 50 U.S.C. § 403g constitutes an applicable statute for purposes of claiming a (b)(3) exemption. Section 403g provides:

In the interests of the security of the foreign intelligence activities of the United States and in order further to implement the proviso of section 403(d)(3) of this title that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, *the Agency shall be exempted from* the provisions of section 654 of Title 5, and *the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency*: Provided, That in furtherance of this section, the Director of the Bureau of the Budget shall make no reports to the Congress in connection with the Agency under section 947(b) of Title 5. [Emphasis supplied]

Since exemption (b)(3) incorporates a Congressional determination that certain materials should not be subject to mandatory disclosure, this court's role in determining the propriety of a statute in a (b)(3) exemption claim is limited. As Justice Stewart stated in *Administrator, Federal Aviation Administration v. Robertson,*

As matters now stand, when an agency asserts a right to withhold information based on a specific statute of the kind described in Exemption 3, the only question "to be determined in a district court's de novo inquiry is the factual existence of such a statute, regardless of how unwise, self-protective, or inadvertent the statute might be." [Citation omitted].

422 U.S. 255, 269–70, 95 S.Ct. 2140, 2149, 45 L.Ed.2d 164 (1975) (Stewart, J., concurring).

---

1. Plaintiffs were discharged by the CIA, along with many others, three years ago when the CIA cut back on its personnel. Plaintiffs reportedly desire the records at issue in order to determine whether they might have a cause of action based on their termination. The motive behind the request for records in a FOIA case is not relevant to any issue, however, and the court will not consider it.

Thus the first and primary question for the court is whether section 403g constitutes a (b)(3) exemption statute.

█ Although this court previously has concluded that section 403g is a (b)(3) exemption statute,[2] that conclusion should be reexamined in light of the Court of Appeals recent decision in *Phillippi v. CIA,* 546 F.2d 1009 (D.C.Cir. 1976). In *Phillippi* the Court of Appeals addressed the question of whether section 403g is a (b)(3) statute in the context of advising the district court on further proceedings in that case necessitated by the appeals court's reversal and remand. Slip opinion, at 12 n.14. In response to the CIA's contention that section 403g "allows the Agency to refuse to provide any information at all about anything it does", the court stated:

> We do not think that § 403g is so broad . . . . Section 403g is intended "further to implement the proviso of section 403(d) * * * that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure * * *." This limited purpose is explicitly recognized in the congressional reports cited above, and there is no indication that the section is to be read as a provision authorizing the Agency to withhold any information it may not, for some reason, desire to make public. Moreover, the wording of the section strongly suggests that the authority it confers is specifically directed at any statutes that would otherwise require the Agency to divulge information about its internal structure. The legislative history of the section supports this limited interpretation. *See* S.Rep.No.106, 81st Cong., 1st Sess. 4 (1949); H.R.Rep.No.160, 81st Cong., 1st Sess. 4 (1949).

*Id.* While the court certainly here narrows the scope of the potential application of section 403g as a (b)(3) exemption statute, this opinion in no way casts doubt on the conclusion that section 403g qualifies as a (b)(3) statute, particularly in light of the Court of Appeals' confirmation that section 403(d)(3) constitutes a (b)(3) statute. *See id.* Of course, section 403g cannot be invoked to protect all activities of the CIA, only those directly concerning the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency. The possibly limited purposes surrounding the enactment of section 403g do not operate to exclude its applicability to another statute (FOIA) that potentially mandates disclosure of material explicitly protected by section 403g. The conclusion that section 403g qualifies as a (b)(3) statute is bolstered by the Congressional Conference Report's citation of 403g as an example of a (b)(3) exemption statute. H.Rep.No.1380, 93d Cong., 2d Sess. 12 (1974).

Plaintiffs contend, however, that even if section 403g is a (b)(3) exemption statute, it is one only where the personnel matters sought to be protected present a colorable relationship to the security of foreign intelligence activities and the protection of intelligence sources and methods. Plaintiffs assert that they performed only ordinary and mundane tasks within the bureaucracy involving no sensitive matters or work with intelligence evaluation or dissemination.[3] Because of the routine nature of plaintiffs' jobs, they contend that section 403g cannot apply because of the lack of a nexus to the protection of intelligence sources and methods or the security of foreign intelligence activities. In short, plaintiffs argue that section 403g is inapplicable because none of their work or the regulations relating to hiring or discharging involves national security.

This contention flies in the face of the affidavit submitted by F. W. M. Janney, director of the Office of Personnel of the CIA. He states that the uniquely sensitive nature of the CIA's functions necessarily is reflected in its personnel policies, and that disclosure of the requested documents

---

2. *See Hayden v. CIA,* Civ. No. 76–284 (D.D.C. Oct. 18, 1976), at 3.

3. Plaintiffs worked as photographic analysts, graphics editors and coordinators, data processors, and physicists.

would reveal the picture of the environment in which the CIA manages its personnel, thereby creating a risk that a foreign intelligence organization could assess the personnel system to allow circumvention of the rules and procedures to the detriment of national security. Collectively the documents reflect management attitudes techniques, safeguards, and conditions of employment.

 The court reads section 403g, as do defendants, to mean that the CIA may determine that disclosure of personnel matter may by itself constitute the danger to security or intelligence sources and methods that the statute expressly seeks to prevent. No preliminary showing should be required of the CIA to prove that disclosure would in fact damage intelligence activities or compromise intelligence sources and methods. This determination already has been made by Congress, subject to implementation by the agency. The fact of the alleged insensitivity of the positions held by plaintiffs does not impact the clear provisions of the statute exempting the agency from forced disclosure of certain personnel matters.

 Mr. Janney's affidavit states in detail the contents of the Headquarters Regulations dealing with the hiring or discharging of employees and of the vacancy notices posted from time to time. From his description it is clear that the documents sought would reveal the organization, functions, names, official titles, salaries, or numbers of personnel employed by the agency; plaintiffs do not dispute this. Mr. Janney further states that disclosure would compromise intelligence sources and methods for the reasons stated *supra.* Accordingly, no *in camera* inspection is necessary to determine that exemption (b)(3) properly is invoked. *See National Airlines, Inc. v. CAB,* Civ. No. 75–613 (D.D.C. Oct. 10, 1975).

Because the court concludes that the documents sought are exempt from mandatory disclosure under exemption (b)(3), the court need not reach defendants' alternative argument that exemption (b)(2) applies.

Accordingly, it is, by this court, this 3rd day of January, 1977,

ORDERED that defendants' motion for summary judgment be, and the same hereby is, granted; and it is further

ORDERED that plaintiffs' motion for summary judgment be, and the same hereby is, denied; and it is further

ORDERED that judgment be, and the same hereby is, entered in favor of defendants.