Zdenek CERVENY, Plaintiff,

v.

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

**Civ. A. No. 76 M 690.**

United States District Court,
D. Colorado.

Jan. 24, 1978.

Martin D. Buckley, Hornbein, MacDonald & Fattor, Denver, Colo., for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Jeffrey Axelrad and Paul F. Figley, Attys., Information and Privacy Section, Civ. Div., U. S. Dept. of Justice, Washington, D. C., Joseph F. Dolan, U. S. Atty., and James Gatlin, Asst. U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM AND ORDER

MATSCH, District Judge.

Thomas Riha has been a missing person since an abrupt departure from his Boulder, Colorado, residence and teaching position at the University of Colorado in March, 1969. None of his family, friends or colleagues has had any information from him since that time. The mysterious disappearance

of Professor Riha has been the subject of news media activity and considerable speculation has been generated about the possibility that the Central Intelligence Agency (CIA) and the Federal Bureau of Investigation (FBI) were involved. An initial impetus for such conjecture may have come from a conversation between officials of the Denver FBI and CIA offices which resulted in a statement that Professor Riha was safe and that he had departed voluntarily because of a personal problem.

The manner in which this matter was handled between the Denver offices of the FBI and CIA resulted in a complete termination of any communication between those two agencies at the national level.

The Select Committee on Intelligence Activities of the United States Senate heard testimony from a former CIA official and a former FBI official in November, 1975. The staff of that committee prepared a written report about the Riha matter in February, 1976. That report referred to inquiries made of the CIA, the FBI, the Defense Intelligence Agency and the Immigration and Naturalization Service. United States Senator Gary Hart (Colorado) then released the following public statement about the Riha case:

Thomas Riha, is, most probably, living somewhere today in Eastern Europe, possibly in Czeckoslovakia (sic). He was sighted there in 1973. Why he left the United States remains unclear: personal reasons were probably the basis for his decision to leave.

Thomas Riha was never employed, nor in contact with, the CIA, the FBI or military intelligence. At one time the CIA had a general counterintelligence interest in Riha, but this interest was never pursued. There is no indication of any kind that the CIA, the FBI or military was involved in Riha's disappearance.

Mrs. Galya Tannenbaum was never employed nor involved with the CIA, FBI or military intelligence. Her actions, motivations and involvement with Riha remain unclear. The nature of her involvement with Riha cannot be determined

from a review of the files supplied to the Committee.

The breaking off of formal FBI–CIA relations in 1970 resulted not from a dispute over Riha himself but from the bureaucratic handling of the Riha case by local FBI and CIA officials in Denver.

Proceedings had been commenced in 1970 in the Probate Court in and for the City and County of Denver, Colorado, to recover and preserve the assets of Riha's estate and Zdenek Cerveny was appointed conservator of the absentee estate. Colorado law provides a presumption of death after a continuous, unexplained absence of seven years. Because of the Select Committee Staff report and the statement of Senator Hart, Mr. Cerveny caused a letter request to be made of the CIA on February 17, 1976, pursuant to the Freedom of Information Act (FOIA) asking for any information concerning the disappearance or whereabouts of Riha and all agency documents on the subject. That request was an act undertaken in the performance of Mr. Cerveny's legal duty to make diligent inquiry as a requirement for application of the presumption of death. The CIA responded to the request by releasing copies of two memoranda. Memorandum 7–74, dated January 31, 1974, was provided, with deletions based on claims of exemptions under (b)(1), (b)(2), (b)(3) and (b)(6) of the FOIA. The second document was a copy of Memorandum 21–74, dated March 13, 1974, with deletions based upon the same four exemptions.

Mr. Cerveny then filed his complaint in this court on July 12, 1976 to require further disclosure. Jurisdiction has been invoked properly under 5 U.S.C. § 552(a)(4)(B). After the complaint was filed, the CIA Information Review Committee affirmed the claims of exemption.

At a pre-trial conference held on September 22, 1976, it became apparent that the plaintiff's primary interest was to learn the identity of a person who reportedly had seen Professor Riha in Czechoslovakia in late 1973. That sighting was the subject of the two released memoranda. Counsel for the respondent agreed to request the CIA

to submit affidavits in support of the claimed exemptions, following the procedure suggested in *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973).

On November 8, 1976, the defendant filed a motion for summary judgment, accompanied by four affidavits of CIA officials. They described additional releases of 174 pages of newspaper clippings and 38 documents released with deletions. Seven additional documents, withheld in their entireties, have been characterized as cables, dating from October 20 to November 9, 1971, which were generated as a result of an individual contacting a CIA representative overseas for the purpose of obtaining information for a newspaper story about the Riha disappearance. According to the affidavits, no agency activity was involved. Exemptions of those cables are asserted under (b)(1), (b)(2), (b)(3) and (b)(6) and it has been claimed that there are no reasonably segregable relevant portions of them. Additionally, the defendant disclosed that it had 14 documents which had originated with the FBI and that there had been a response made by the CIA to a set of interrogatories from the Senate Select Committee on Intelligence in November, 1975. The affidavits also indicated that the CIA had taken the extraordinary step of requesting permission from its source to release identifying information, which request was denied. Additionally, it was reported that the personal safety of the original source would be threatened if identification were made.

Additional affidavits were filed in answer to some of the questions raised in the plaintiff's memorandum brief. A hearing on the motion for summary judgment was held on August 1, 1977. At that hearing, the court noted that since this suit had begun a new Director of the Central Intelligence Agency had been selected, personally, by a new President who had directed a new policy of openness in that agency. Accordingly, the court suggested that the Director take the extraordinary action of making a personal review of the CIA material relevant to this case.

That suggestion was accepted and by a letter to the court, dated October 8, 1977, Admiral Stansfield Turner reported the result of his personal inquiry into the matter as the Director of the Central Intelligence Agency. After his assertion that the disclosure of the intelligence source reporting the hearsay information on the sighting of Professor Riha would be contrary to his statutory responsibility to protect intelligence sources and methods from unauthorized disclosure, the Director wrote concerning the sighting memoranda:

The actual identity or reliability of the original source of the information is not known to this Agency, nor does the Agency have sufficient information upon which to base an informed judgment as to the accuracy of the information provided by that individual. As I have indicated, the information contained in Documents Nos. 1 and 2 is third-hand information and the Agency has made no attempt to verify the information.

Admiral Turner also wrote that he had reviewed the seven documents which had been withheld in their entireties and that he agreed with the characterization of the information contained therein as having no probative value with respect to the Riha disappearance or whereabouts.

At a hearing on December 16, 1977, the plaintiff renewed his request for an *in camera* inspection of the CIA documents and files. Particular concern was expressed about the adequacy of the search for relevant documents in the CIA files. In justification of that concern, plaintiff's counsel reported that Mr. Cerveny had recently received an unsolicited communication concerning information within the files of the United States Army Intelligence Agency, an organization within the Department of Defense. A copy of the Army document had been in the CIA files, a fact which had not been disclosed in the affidavits filed in support of the defendant's motion for summary judgment. That failure was explained satisfactorily by counsel for the defendant at the hearing.

Given the volume and complexity of the records kept by the CIA, there can be no absolute certainty that everything touching and concerning any specific subject has been located. The FOIA does not require an absolute guarantee of an exhaustive exhumation of records. The duty is to make a good faith effort to conduct a search using methods which can reasonably be expected to produce the information requested. From the affidavits submitted, it is apparent that the officials of the CIA have performed that duty in this case.

5 U.S.C. § 552(b)(1) exempts from disclosure all matters that are in fact properly classified under criteria established by an executive order in the interest of national defense or foreign policy. While the 1974 amendments to the FOIA expressly authorized an *in camera* inspection of documents claimed to be exempt under (b)(1), the legislative history reflects the expectation that the courts "will accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." Conf.Rep.No.93–1200, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News, pp. 6285, 6290. It has been recognized in other cases involving the CIA that the courts have little competence in evaluating intelligence information because of a lack of cognitive context. The role of the court was articulated in *Weissman v. Central Intelligence Agency*, 184 U.S.App. D.C. 117, 565 F.2d 692 (1977) in these words:

> If exemption is claimed on the basis of national security the District Court must, of course, be satisfied that proper procedures have been followed, and that by its sufficient description the contested document logically falls into the category of the exemption indicated. In deciding whether to conduct an *in camera* inspection it need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith. 184 U.S.App.D.C. page 122, 565 F.2d page 697.

5 U.S.C. § 552(b)(3) excludes application of the Act to matters which are specifically exempted from disclosure by another statute without discretion or with definite criteria for withholding or references to particular types of matters to be withheld. The Central Intelligence Agency Act of 1949, establishing the CIA, holds the Director of the Central Intelligence Agency responsible "for protecting intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 403(d)(3), and specifically exempts the agency from "the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 403g. These statutory provisions have been held to be within the scope of the (b)(3) exclusion in the FOIA. *Weissman, supra; Phillippi v. Central Intelligence Agency*, 178 U.S.App. D.C. 243, 546 F.2d 1009 (1976); *Baker v. Central Intelligence Agency*, 425 F.Supp. 633 (D.D.C.1977); *Bennett v. United States Department of Defense*, 419 F.Supp. 663 (S.D.N.Y.1976); *Richardson v. Spahr*, 416 F.Supp. 752 (W.D.Pa.), *aff'd.*, 547 F.2d 1163 (3d Cir. 1976).

Here, Admiral Turner has explicitly informed this court that disclosure of that which has been deleted and withheld would constitute a violation of this specific statutory duty. There is no reason to question the expertise or the good faith of Admiral Turner.

Some deletions have been made on the basis of the exemption for internal personnel rules and practices under 5 U.S.C. § 552(b)(2). More specifically, these are markings and reference numbers which were placed on the documents for internal purposes. While the applicability of (b)(2) is questionable under *Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), the plaintiff has taken the position that he is concerned with such markings only if they would assist in the location of other relevant documents or information. There is no reason to question the response in the supplemental affidavits that the deletions would not provide such assistance.

Some information, including the names of individuals, has been withheld upon the conclusion that there would be an unwarranted invasion of personal privacy, exempted by 5 U.S.C. § 552(b)(6). The affidavits and the Director's letter advised that what has been withheld includes unsubstantiated information which is derogatory and which concerns persons not connected with the Riha matter. Additionally, it is realistic to recognize that the mere mention of the names of individuals as being the subjects of CIA files could be damaging to their reputations.

■ The application of the privacy exemption requires a balancing of the interests of the public in obtaining disclosure and the preservation of the integrity of an individual's reputation and right to privacy. *Campbell v. United States Civil Service Commission*, 539 F.2d 58 (10th Cir. 1976). The particularized need of Mr. Cerveny for information relevant to his duty of inquiry is not a factor in the balance. The plaintiff here is no different from any other person seeking public disclosure of the information. A moment's reflection upon recent political history and the excesses of the internal security investigations in the 1950's should be sufficient to signal caution in dealing with unverified derogatory material within the files of an intelligence gathering agency of government. Indiscriminate public disclosure of such material in response to a citizen's FOIA request would be as much an abuse of agency authority as an intentional release designed to damage persons. The impact on the individual is the same. The deletions here are appropriate applications of the privacy exemption.

■ The developments in this FOIA case are sufficiently unusual to be characterized as unique. The classified information within the CIA files relevant to the Riha inquiry has been reviewed by a committee of the United States Senate. Because that committee has continued to keep the information classified, it is a fair inference that the Senators and staff share the concern for the national security and national defense interests reflected in the classification. Addi-

tionally, the subject material has been reviewed by a person who holds the highest authority and responsibility for foreign intelligence matters within the executive branch, with the exception of the President himself. I am satisfied with the sufficiency of the responses made in the course of this proceeding and the plaintiff is entitled to nothing more.

■ A claim for an award of attorney's fees has been made. 5 U.S.C. § 552(a)(4)(E) authorizes the assessment of reasonable attorney's fees and other litigation costs in any case in which the complainant has substantially prevailed. Other considerations used in determining an award of attorney's fees are whether the litigation has resulted in a substantial contribution to the public interest; the commercial benefit to the complainant and the nature of his interests in the records sought; and whether the United States had a "reasonable basis in law" for withholding the records. See *Campbell, supra,* at 62; *Cuneo v. Rumsfeld,* 180 U.S.App.D.C. 184, 553 F.2d 1360 (1977); *Vermont Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509 (2d Cir. 1976); Conf.Rep.No.93–1200, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin. News, pp. 6285, 6288.

In this case the parties have not yet been given an opportunity to be heard on the issue of attorney's fees and, accordingly, the entry of judgment will be deferred pending a hearing on attorney's fees.

Upon the foregoing, it is

ORDERED that the defendant's motion for summary judgment is granted, and it is

FURTHER ORDERED that entry of judgment upon this order is deferred pending hearing on attorney's fees.