**Gregory Gene RUSHFORD, Plaintiff,**

v.

**Benjamin CIVILETTI et al., Defendants.**

Civ. A. No. 79–1424.

United States District Court,
District of Columbia,
Civil Division.

Feb. 27, 1980.

John C. Topping, Jr., Topping & Sherer, Washington, D.C., for plaintiff.

R. John Seibert, U.S. Dept. of Justice, Washington, D.C., for defendants.

## OPINION

HAROLD H. GREENE, District Judge.

This is an action under the Freedom of Information Act, 5 U.S.C. § 552, in which plaintiff seeks the release of files the Department of Justice maintains on allegations that federal judges may have engaged in criminal or other misconduct. The Department has agreed to release files on deceased judges, but it invokes Exemptions 6 and 7(C) of the Act insofar as the request concerns living judges. Presently pending before the Court is defendants' motion for partial summary judgment.[1]

[1] Exemption 7(C)[2] provides that the Freedom of Information Act does not apply to

> (7) Investigatory records compiled for law enforcement purposes but only to

the extent that the production of such records would . . . (C) constitute an unwarranted invasion of personal privacy . . ..

There is no question but that the documents sought by plaintiff are "investigatory records compiled for law enforcement purposes." See *Irons v. Bell,* 596 F.2d 468, 475 (1st Cir. 1979). Thus, the only issue to be resolved here is whether production of the records would constitute "[an] unwarranted invasion of personal privacy."

Unlike other provisions of the Freedom of Information Act, the privacy exemptions operate on the basis of a balancing test. See *Department of the Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976), where the Supreme Court held that, in applying these provisions, the courts must balance the public interest in disclosure against the personal interest in privacy of the affected person. See also *Rural Housing Alliance v. U.S. Dept. of Agriculture,* 162 U.S.App.D.C. 122, 498 F.2d 73 (D.C.Cir.1974); *Getman v. National Labor Relations Board,* 146 U.S.App. D.C. 209, 213, 450 F.2d 670, 674 (D.C.Cir. 1971). In performing this task, the court must consider not only the intended use of the information by the plaintiff but also its possible use by other members of the public. *Ditlow v. Shultz,* 170 U.S.App.D.C. 352, 357, 517 F.2d 166, 171 n.21 (D.C.Cir.1975). It is with these principles in mind that plaintiff's request must be considered.

In essence, plaintiff asserts the following, somewhat interrelated, interests: the gen-

---

1. Defendants are not requesting summary judgment with respect to plaintiff's demand for files on deceased judges. Defendants have also moved to have various individuals dismissed from the action. There is no opposition from plaintiff to that motion, and it will be granted. See *OKC Corp. v. Williams,* 461 F.Supp. 540 (N.D.Tex.1978); *Morpurgo v. Board of Higher Education,* 423 F.Supp. 704 (S.D.N.Y.1976).

2. Exemption 6 exempts from disclosure certain medical and similar personal files. The language and the legislative history of the Act indicate that the scope of Exemption 6 was intended to be narrower than Exemption 7(C). Under Exemption 6 files are exempt only if disclosure would constitute "a *clearly* unwar-

ranted invasion of personal privacy" (emphasis added); while under Exemption 7(C) records are exempt to the extent that their production would constitute "[an] unwarranted invasion of personal privacy." See *Department of Air Force v. Rose,* 425 U.S. 352, 378, 379 n.16, 96 S.Ct. 1592, 1607 n.16, 48 L.Ed.2d 11 (1976). For that reason, it is generally recognized that greater weight should be given to the claim of privacy when Exemption 7(C) is invoked. *Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1136 n.7 (4th Cir. 1977). Since the records here involved are investigatory records compiled for law enforcement purposes, the Court needs to and will consider only Exemption 7(C).

eral public interest in knowing what government officials are doing in their official capacities;[3] the usefulness of a factual record which might dispel unfounded rumors concerning judicial misconduct; and the public interest in knowing the extent to which the Department of Justice may have coerced federal judges into resigning by threats of criminal prosecution. The government argues that some of these objectives may be accomplished by other means,[4] and that contention appears to be correct. For example, to the extent that a judge may feel that unwarranted rumors of misconduct need dispelling, he would be free to waive his privacy rights and thus accomplish the release to the public of the results of an investigation of his conduct. Insofar as Justice Department "plea bargaining" with judges is concerned, patterns along these lines could in all likelihood be adequately discerned by an analysis of the many files relating to deceased judges which the Department of Justice is prepared to release.

More broadly, it is contended on behalf of defendants that disclosure of the requested information would constitute a significant impairment of the privacy interest protected by Exemption 7(C).

■ Publication of the fact that a federal judge has been the subject of a criminal investigation would clearly have a severe adverse impact both upon his personal life and his official performance. The Judiciary, more so than the other branches of government, relies for its effectiveness primarily upon the reputation of its members. As has often been said, the courts lack both the power of the sword and the power of the purse. Unlike the Executive Branch, they do not exercise command over military and law enforcement personnel and, unlike the Congress, they have no authority to levy taxes or to appropriate money. In the final analysis, the Judiciary's authority and the general compliance with its decisions depends upon the integrity of the judges and the public's perception of that integrity.

There can be no question but that this fundamental asset would be in serious jeopardy by release of information that a great many judges have been subjected to a great many investigations, however unfounded the particular complaints may have turned out to be.[5] That damage would not be significantly minimized, either with respect to the Judiciary in general or with respect to any particular judge, by a Department of Justice notation appended to a bundle of documents that no basis for a criminal prosecution had been found.[6] Exoneration rarely commands the same public attention as a charge of wrongdoing.[7]

To be sure, judges, no more than other private citizens or public officials, are entitled to have their violations of the law or other misdeeds shielded from public view, and such information should and must be made freely available. But plaintiff here is seeking only those files where violations of

---

3. Plaintiff is a journalist and, together with another newspaperman, he wishes to write for publication about improper judicial conduct and related subjects.

4. See *Ditlow v. Shultz, supra,* 170 U.S.App.D.C. at 358–9, 517 F.2d at 172–3; *Rural Housing Alliance v. Department of Agriculture,* 162 U.S. App.D.C. at 127, 498 F.2d at 78, *supra.*

5. An affidavit of the Chief of the Public Integrity Section of the Department's Criminal Division submitted in support of the government's motion for partial summary judgment states that the Department receives a considerable number of unfounded charges against judges, the vast majority from disappointed or disgruntled civil or criminal litigants.

6. The affidavit submitted in support of the government's motion averring that public acknowledgment of a Department of Justice file on a judge would "substantially damage [his or her] reputation . . . and would constitute a clearly unwarranted invasion of his or her personal privacy" was not contradicted by contrary evidence. See *Radio City Music Hall Corp. v. United States,* 135 F.2d 715, 718 (2d Cir. 1943).

7. Moreover, at present a judge generally would not even be aware that a charge had been filed against him, and he therefore could not conceivably be influenced by that fact in his performance with respect to a particular case or litigant.

law were *not* found.[8] It is not to minimize plaintiff's objectives to conclude that the general purposes he asserts are outweighed by the very significant and tangible public interest in a Judiciary or an individual judge unsullied by the publication of false accusations,[9] particularly under the Exemption 7(C) standard which accentuates privacy considerations (see note 2 *supra*).

Even in cases not involving the especially delicate judicial function, it has consistently been held that the privacy interest in the non-disclosure of information similar to that sought here outweighs such interest as the particular plaintiffs or the public may have in their revelation, and that such information is therefore exempt from disclosure under the Freedom of Information Act.[10] See *Fund for Constitutional Government v. National Archives and Records Service*, 485 F.Supp. 1 (D.D.C.1978) (identification of individuals investigated by the Watergate special prosecution force but not charged with crime held exempt under 7(C)); *Baldwin v. Baker*, Civil Action No. 75–1221 (D.D.C. Aug. 25, 1978) (unwarranted invasion of privacy found in requested disclosure of persons involved in investigation of former Vice President Agnew

against whom no charges had been brought); *Cerveny v. Central Intelligence Agency*, 445 F.Supp. 772 (D.Colo.1978) (indiscriminate public disclosure of unverified derogatory material in the files of intelligence gathering agency would be an abuse of authority); *Tax Reform Research Group v. Internal Revenue Service*, 419 F.Supp. 415 (D.D.C.1976) (names of taxpayers allegedly regarded as friends or enemies of the Nixon Administration withheld under 7(C) as against a claim that release of the names would help to curb the use of the IRS for political purposes).[11] *A fortiori* this kind of information is exempt from disclosure in this instance.

■ Plaintiff suggests that the balancing of the various interests must be done on an individual, factual basis, and that a decision cannot be made as a matter of law by way of a motion for summary judgment. But there is no genuine dispute on the only material facts [12]—that the Department of Justice is maintaining files on complaints of judicial misconduct and that release of the information is likely to be embarrassing to the individuals involved, both in their personal and professional capacities. The de-

---

8. A Department of Justice investigation which produces sufficient evidence to commence criminal proceedings would of course immediately be made public.

9. The exemption applies to matters which under normal circumstances "would prove personally embarrassing to an individual of normal sensibilities . . .." *Committee on Masonic Homes v. NLRB*, 414 F.Supp. 426, 431 (E.D.Pa. 1976); see also, *Rural Housing Alliance v. U.S. Department of Agriculture, supra*, 162 U.S. App.D.C. at 126, 498 F.2d at 77.

10. As the court said in *Fund for Constitutional Government v. National Archives and Records Service, supra*, p. 6, "an individual does not lose his right to privacy simply because he has been investigated and subsequently not charged with any offense . . . [but] such an individual may require even greater protection" because his connection with an investigation may prove "both embarrassing and damaging." embarrassing and damaging."

11. While plaintiff has sought to distinguish the cases cited by the government, he has not cited a single decision by any court which ordered records released in circumstances similar to

those involved here. *Disabled Officers Association v. Rumsfeld*, 428 F.Supp. 454 (D.D.C. 1977) involved no more than a disclosure of the names and addresses of officers retired on disability. *Tennessean Newspaper v. Levi*, 403 F.Supp. 1318 (M.D.Tenn.1975), provided for the release of information about persons actually arrested or charged with the violation of federal criminal laws, the court emphasizing that their arrests or indictments operated as a forfeiture of existing privacy interests. *Congressional News Syndicate v. U.S. Department of Justice*, 438 F.Supp. 538 (D.D.C.1977) involved disclosure where Corrupt Practices Act had stripped records of privacy. The only other decision cited by plaintiff (*New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)) does not involve the FOIA at all.

12: Some of the collateral issues raised by plaintiff, *e. g.*, whether the Department of Justice has abused its prosecutorial discretion, are not material to this FOIA suit. See *Lee Pharmaceuticals v. Kreps*, 577 F.2d 610, 618 (9th Cir. 1977).

velopment of a factual record is unnecessary and inappropriate when it may properly be determined that, for reasons applicable generally, and without regard to particular circumstances, the privacy interest sought to be protected outweighs the interest in revelation asserted by the particular plaintiff.[13]

For the reasons stated, defendants' motion for partial summary judgment will be granted, and the action will be dismissed insofar as it relates to records on judges who are not deceased.

13. Moreover, the development of a factual record would, as a practical matter, be impossible, without an incidental disclosure of the very information that would be sought to be protected. For the same reason, the Department of Justice may not be required to deny the existence of a criminal investigation when there has been none and to refuse to confirm or deny its existence when information to that effect does exist. It may also be noted that FOIA cases are almost invariably resolved on summary judgment, as distinguished from full-fledged trials.