**Michael C. ANTONELLI, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendant.**

**No. 79 C 1432.**

United States District Court,
N.D. Illinois, E.D.

Aug. 11, 1982.

**20**

Michael C. Antonelli, pro se.

James P. White, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

This case comes to us on the motion of the defendants, the Federal Bureau of Investigation ("FBI") and Department of Justice, for a stay pending appeal of our order issued April 6, 1982. *See Antonelli v. Federal Bureau of Investigation*, 536 F.Supp. 568 (N.D.Ill.1982). Plaintiff's complaint is a consolidation of thirty-six separate suits brought by plaintiff against the FBI for failure to respond to requests brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1976). In our opinion of April 6 we granted defendants' motion for summary judgment with respect to counts 6, 10, 11, 13, 16, 17 and 36. We also granted defendants' motions for summary judgment as to counts 15, 25, 26 and 28, but without prejudice, and permitted plaintiff to voluntarily dismiss counts 18, 22, 29 and 32. We granted plaintiff's cross motion for summary judgment on count 1. Finally, with respect to counts 2, 3, 7, 8, 19, 30 and 31 we denied both motions for summary judgment and ordered defendant to respond by citing any exemptions under the FOIA within thirty days. Defendants now seek a stay for purposes of appeal only with respect to the last group of claims.

The factors to be considered on a request for a stay pending appeal are (1) whether appellant has made a showing of likelihood of success on appeal, (2) whether appellant has demonstrated a likelihood of irreparable injury absent a stay, (3) whether a stay would substantially harm other parties to the litigation and (4) where the public interest lies. *Adams v. Walker*, 488 F.2d 1064 (7th Cir.1973) (citing *Miltenberger v. Chesapeake & Ohio Railroad*, 450 F.2d 971, 974 (4th Cir.1971)).

The government has cited new authority in support of its motion. *See* Defendants' Motion for Stay Pending Appeal ¶ 4. Furthermore, we have discovered significant additional authority on the questions at issue here which the government did not cite but which we believe warrants examination in the context of this case. In light of that authority, and the fact that appellants' likelihood of success on appeal is of prime import in determining whether a stay should be granted, *see Adams v. Walker*, 488 F.2d at 1065, we take this opportunity to offer some supplemental discussion on that portion of the opinion challenged by the government. We turn first, therefore, to defendants' likelihood of success on the merits of the appeal.

The motion for summary judgment and ·affidavits submitted by the FBI agents in support of the motion cited § 552a(b) of the Privacy Act, 5 U.S.C. § 552a (1976), as a

rationale for refusing to respond to plaintiff's FOIA requests. However, in the legal memorandum submitted by the government there was not a mention of the Privacy Act. Instead it relied entirely on the privacy and law enforcement exemptions contained in the FOIA itself. 5 U.S.C. §§ 552(b)(6) and

1. Defendants also raised the issue of exhaustion of administrative remedies which we addressed in our original opinion. *See* 536 F.Supp. at 575 n. 12.

2. In their motion for a stay defendants call the court's attention to the decision in *Rushford v. Civiletti,* 485 F.Supp. 477 (D.D.C.1980), aff'd, 656 F.2d 900 (D.C.Cir.1981) as additional authority in support of their position that the FOIA itself, rather than the Privacy Act, justifies their position in this case.

In *Rushford* plaintiff's request for files from the FBI relating to criminal investigations of federal judges which had not resulted in charges being brought against those judges were held to be exempt under § (b)(7)(C) as an unwarranted invasion of personal privacy. The court focused on the particular susceptibility of members of the federal bench to adverse impact from disclosure that they had been investigated by the FBI, even though nothing had been found which warranted prosecution. *Id.* at 479. The court declined to engage in individual inspection of the files before conducting the balancing required under *Dep't of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976):

> Plaintiff suggests that the balancing of the various interests must be done on an individual, factual basis, and that a decision cannot be made as a matter of law by way of a motion for summary judgment. But there is no genuine dispute on the only material facts—that the Department of Justice is maintaining files on complaints of judicial misconduct and that release of information is likely to be embarrassing to the individuals involved, both in their personal and professional capacities. The development of a factual record is unnecessary and inappropriate when it may properly be determined that, for reasons applicable generally, and without regard to particular circumstances, the privacy interest sought to be protected outweighs the interest in revelation asserted by the particular plaintiff.

*Rushford,* 485 F.Supp. at 480–81 (footnotes omitted).

Regardless of whether we believe the court was correct in refusing to inspect the withheld files before deciding if they were exempt, the instant case is substantially different from *Rushford.* In *Rushford* the court was at least aware that it was dealing with a particular type of file which contained a particular type of information. Here, we have no such informa-

(b)(7). *See* Defendants' Reply Memorandum ¶ 2.[1] We rejected the government's contention that the FOIA exemption justified the FBI's refusal to even search their files for the requested material before denying plaintiff's search request. *See* 536 F.Supp. at 573–75.[2] In addition we felt

tion because the FBI refuses to provide it. Relying, we assume on its interpretation of the Privacy Act, the Bureau refused to inform the plaintiff or the court whether any files of any type exist on the requested individuals. The affidavits submitted addressing the privacy interests were phrased entirely in the hypothetical. Rather than indicating the type of information and why it is exempt, the FBI simply said *if* it had any information, all of it would be exempt. *See Antonelli,* 536 F.Supp. at 573. We continue to believe that if the FBI's position were adopted it would be tantamount to granting the Bureau a *per se* exemption from the FOIA without judicial oversight designed to balance the interest in public disclosure against "unwarranted invasions of personal privacy." Neither *Rushford* nor the cases it relied on warrant such a result. In each of the cases relied on in *Rushford* where withholding of documents was permitted under § (b)(7)(C) the court was either provided with the withheld documents or received affidavits detailing the nature of the documents and why they should not be released. *See Fund for Constitutional Government v. National Archives and Records Service,* 485 F.Supp. 1 (D.D.C.1978); *Cerveny v. Central Intelligence Agency,* 445 F.Supp. 772 (D.Colo.1978); *Tax Reform Research Group v. Internal Revenue Service,* 419 F.Supp. 415 (D.D.C.1976). With respect to the counts upon which the government appeals, we received no such documents or information.

Nor can we conclude as did the court in *Rushford* that the privacy interests involved and the weight attached to those interests, is the same for all of the material requested by plaintiff. *Rushford* recognized that individuals in different situations may have different privacy interests at stake depending on the type of information requested. *See* 485 F.Supp. at 480 n. 11. In particular it has been recognized that individuals who have been prosecuted and convicted of federal crimes may have a lesser privacy interest in the "routine" material contained in an FBI file. *See Tennessean Newspaper, Inc. v. Levi,* 403 F.Supp. 1318 (M.D.Tenn. 1975). Plaintiff asserted in his papers, and defendant has not denied, that several of the individuals about whom he has requested information have been prosecuted and convicted for federal crimes. While we do not believe that people so convicted lose their right to privacy, it is possible that privacy interests lessen where one has been prosecuted for an offense in open court, and we do not believe that it is

compelled, despite the government's failure to argue the point, to deal with the Privacy Act issue presented in the motion for summary judgment. *See id.* at 571–73. In light of the new authority which has come to our attention, we review our conclusions below.

The Court of Appeals for the District of Columbia Circuit recently considered in depth the interface between the FOIA and the Privacy Act in *Greentree v. United States Customs Service,* 674 F.2d 74 (D.C. Cir.1982). The court discussed at length the question whether the Privacy Act operates to override the FOIA and permit the withholding of documents based solely on the Privacy Act. *Id.* at 76–85. The precise question in *Greentree* is somewhat different than the case at bar. There, the court addressed whether a first party request for information was exempt from disclosure by virtue of the law enforcement exemption contained in 5 U.S.C. § 552a(j)(2) without reference to the FOIA. *Id.* at 75. The question turned, in brief, on whether 552a(j)(2) qualifies as a specific exemption from disclosure by statute which entitles the government to resist disclosure under the FOIA. *See* 5 U.S.C. § 552(b)(3). If the Privacy Act section relied on by the government is such a specific exemption from the FOIA, then the question would turn solely on whether the plaintiff has a right to the information under the Privacy Act. *Greentree* held that § 552a(j)(2) was not a "specific exemption" and therefore the FOIA would have to be considered before disclosure could be successfully resisted. *See* 674 F.2d at 76–81.

In the case at bar we are confronted with a third party's request for information concerning another person and the specific issue, while related, is whether § 552a(b) constitutes an exemption from the FOIA's duty to disclose the material, absent a signed release from the subject of the inquiry. In our April 6 opinion we relied on section (b)(2) and held that the Privacy Act

does not operate as an exemption from disclosure under the FOIA:

> (b) Conditions of disclosure.—No agency shall disclose any record which is contained in a system of records by any means of communication to a person or to another agency, except pursuant to a written request by, or with the prior consent of, the individual to whom the record pertains, *unless the disclosure of the record would be* —
>
> \*　\*　\*　\*　\*　\*
>
> (2) *required under section 552 of the title* [.]

5 U.S.C. § 552a(b)(2) (1976) (emphasis supplied). *See also Brown v. FBI,* No. 79 CV 767 (N.D.N.Y.1981), *aff'd,* 658 F.2d 71 (2d Cir.1981); *Florida Medical Ass'n v. HEW,* 479 F.Supp. 1291 (M.D.Fla.1979); *Providence Journal Co. v. FBI,* 460 F.Supp. 762 (D.R.I.1978).

■ The court in *Greentree* agreed with that conclusion: "We must conclude, ... that section (b)(2) of the Privacy Act represents a congressional mandate that the Privacy Act *not* be used as a barrier to FOIA access." 674 F.2d at 79 (emphasis original). In fact, in *Greentree* the government conceded the very question at issue here:

> The government acknowledges that section (b)(2) of the Privacy Act does safeguard FOIA access to the public ...
>
> \*　\*　\*　\*　\*　\*
>
> "In the vast majority of cases, a third party would be protected from obtaining access to records about another individual covered by the Privacy Act (particularly if they are law enforcement records) because of the FOIA privacy exemptions (FOIA exemptions 6 and 7(c)). Under the balancing test used to implement these exemptions such an invasion of privacy is permitted only where it is outweighed. by a countervailing strong public interest in disclosure. *Dept. of*

an unwarranted invasion of privacy to acknowledge the existence of an FBI file on someone who has been prosecuted for a federal offense. While we do not prejudge the ques-

tion of whether specific material is covered by § (b)(7)(C), we cannot engage in the required balancing of interest without knowing what is on one side of the balance.

*Air Force v. Rose,* 425 U.S. 352, 370–76 [96 S.Ct. 1592, 1603–06, 48 L.Ed.2d 11] (1976)."

*Id.* at 79, 80 (quoting Government's brief at 36 n. 18)). We agree, therefore, with the position taken by the government in *Greentree,* at least with respect to this issue; it is (b)(7) or the other enumerated exemptions contained in the FOIA which must be relied on in withholding documents requested by a member of the public.

The legislative history of the Privacy Act confirms this view. As originally submitted to committee the House bill contained section (b)(2) as it currently reads. *See* H.R. 16373, 95th Cong., 2d Sess. 4–5 (1974), *reprinted in* Senate Comm. on Government Operations, 95th Cong., 2d Sess. Legislative History of the Privacy Act of 1974 242–43 (Comm. Print 1976) (hereinafter cited as "Source Book"). In committee the bill was changed to delete (b)(2) as contained in the original bill. *See id.* at 22, Source Book at 279. The House committee report indicates an intent on the part of the committee to override the FOIA without obtaining prior written consent:

> Section 552a(b) provides that no Federal Agency shall disclose any record containing personal information about an individual without his approval to any person not employed by that agency or to another agency except under certain conditions....
>
> This legislation would have an effect on subsection (b)(6) of the Freedom of Information Act (5 U.S.C. section 552), which states that the provisions regarding disclosure of information to the public shall not apply to material "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." H.R. 16373 would make all individually identifiable information in Government files exempt from public disclosure. Such information could be made available to the public only pursuant to rules published by agencies....

H.R.Rep. No. 1416, 93d Cong., 2d Sess. 12, 13 (1974), *reprinted in* Source Book, *supra* p. 5, at 305–06. This version subsequently passed in the full House.

The version of the Privacy Act enacted by the Senate was substantially different than the one which passed the House. Under the Senate bill as submitted to committee, requests for information about third parties disclosable under the FOIA privacy scheme were not exempted from disclosure by the Privacy Act. *See* S. 3418, 93d Cong., 2d Sess. § 205(b) (1974), *reprinted in* Source Book, *supra* p. 5 at 365, U.S.Code Cong. & Admin.News 1974, p. 6916. The Senate committee then adopted generally the House version of the legislation, but reinstated section (b)(2). *See* S. 3418, as amended, 93d Cong., 2d Sess. § 552a(b)(2) (1974), *reprinted in* Source Book, *supra* p. 5, at 463. The disagreement over the interface between the FOIA and the Privacy Act continued after referral back to the House, with the House again deleting section (b)(2). The matter was finally resolved in favor of the Senate position by way of compromise amendment.[3] The purpose of the amendment, which is the current section (b)(2), was explained in an analysis placed in the record by Senator Ervin and Representative Moorhead as chairmen of the respective committees:

> One difficult task in drafting Federal privacy legislation was that of determining the proper balance between the public's right to know about the conduct of their government and their equally important right to have information which is personal to them maintained with the greatest degree of confidence by Federal agencies. The House bill made no specific provision for Freedom of Information Act requests of material which might contain information protected by the Privacy Act....
>
> .    .    .    .    .

3. The compromise amendments to the Privacy Act were worked out informally by the staffs of the respective House and Senate committees working on the legislation rather than by submitting the bill to conference committee. *See* 120 Cong.Rec. 40400 (1974) (statement by Sen. Ervin).

The Senate bill provided that nothing in the act shall be construed to permit the withholding of any personal information which is otherwise required to be disclosed by law or any regulation thereunder. *This section was intended as specific recognition of the need to permit disclosure under the Freedom of Information Act.*

The compromise amendment would add an additional condition of disclosure to the House bill which prohibits disclosure without written request of an individual *unless disclosure of the record would be pursuant to Section 552 of the Freedom of Information Act. This compromise is designed to preserve the status quo as interpreted by the courts regarding the disclosure of personal information under that section.*

120 Cong.Rec. 40405, 40406 (1974) ("Analysis of the House and Senate Compromise Amendments to the Federal Privacy Act") (emphasis added), *reprinted in* Source Book, *supra* p. 5, at 861; 120 Cong.Rec. 40881, 40881 (1974) (same), *reprinted in* Source Book, *supra* p. 5 at 989.[4]

The purpose of § 552a(b)(2) was further explained by James Davidson, Counsel to the Senate Government Operations Subcommittee on Intergovernmental Relations:

It was not without considerable deliberation [ ] that the mechanism in section b(2) [sic] of the Act was chosen to allow present case law to control in the balance between requests for public disclosure of information held by the government and the need to protect the privacy of individual citizens.

Section b(2) states that: [quoting the Act]

In other words, if information about an individual would be released under an FOIA Act request [sic], it could be released under b(2) of the Privacy Act. The standard for release under the FOI

Act is in section b(6) which permits the withholding of information the release of which would constitute a "clearly unwarranted invasion of personal privacy."

Davidson, *The Privacy Act of 1974—Exceptions and Exemptions,* 34 Fed.Bar J. 279, 280 (1975) (footnotes omitted), *reprinted in* Source Book, *supra* p. 5, at 1191–92.[5] *See generally Greentree,* 674 F.2d at 81–85.

The legislative history thus confirms the plain language of the statute regarding the interface between the two statutes where a FOIA request is made for information regarding a third party. What nevertheless causes us to review our decision of April 6, is the statement in *Greentree* that the court was "break[ing] stride" with the Seventh Circuit's reading of the Privacy Act in *Terkel v. Kelly,* 599 F.2d 214 (7th Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980).

*Terkel* involved a request by the plaintiff for information about himself contained in law enforcement and personnel files, a "first party" request. The majority of the court's opinion focused on the justification for withholding information pursuant to § 552(b)(7) of the FOIA. *See* 599 F.2d at 216, 217–18. The court also cited the Privacy Act, § 552a(k)(5), in permitting the FBI to withhold certain documents concerning the appellant's application for employment with the agency. The court stated:

Although the Freedom of Information Act does not contain a comparable exemption, we agree with the lower court that the two statutes must be read together, and that the Freedom of Information Act cannot compel the disclosure of information that the Privacy Act clearly contemplates to be exempt.

*Id.* at 216. It is this statement which forms the basis for the D.C. Circuit's conclusion that *Greentree* "breaks stride" with the law of this circuit. Regardless of how per-

---

4. In the absence of a conference committee, we construe the "Analysis" submitted by the chairman of the respective Senate and House committees responsible for the legislation as the equivalent of a conference committee report.

5. Mr. Davidson's role in shaping the compromise legislation was recognized on the floor of the Senate. *See* 120 Cong.Rec. 40410 (1974) (statement of Sen. Muskie).

suasive we believe the opinion in *Greentree* to be, if the law of this circuit is to the contrary we are required to follow it. We do not believe, however, that the statement in *Terkel* controls the case at bar.

We deal here with a totally separate portion of the Privacy Act involving third party rather than first party requests. The former is governed by §§ 552a(b) and 552a(b)(2) which is outlined above. The court in *Terkel* had no occasion to review or consider section (b)(2) of the Act which specifically exempts from the prohibition on release material required to be disclosed under the FOIA, because first party requests fall under a different section of the statute which does not contain similar language. Section 552a(b) comes into play only where there is no "written request" by or "prior written consent" of the subject of the inquiry. In *Terkel,* and *Greentree* as well, plaintiff requested material concerning himself and therefore section (b), and its exemptions, were not at issue. The court focused instead on the restrictions to first party access which follow § 552a(d). Upon finding an applicable exemption in section (k)(5) the court attempted to reach an accommodation between the two statutes to avoid inconsistent results. Since our view is that section (b)(2) *incorporates* the FOIA for third party requests where no prior consent is obtained, we need not attempt to reconcile any inconsistency in the two statutes. For that reason, we do not believe the statement in *Terkel* is controlling.

■ As the length of this review indicates however, we are concerned that our decision here may run contrary to the view expressed in *Terkel.* It is fair to say that decision is cryptic and we are unsure of the parameters of the "accommodation" between the two statutes envisioned by that case. It is also possible that in light of the decision in *Greentree* and criticism of the result reached in *Terkel* the court of ap-

peals may wish to re-examine its position.[6] In light of the fact that we believe the questions raised here are substantial, and that the government's position would be mooted if it was compelled to respond to plaintiff's FOIA request prior to appeal, we find that the stay requested by the government is appropriate.

Moreover, the interests of non-parties about whom the information is requested argues for a stay to resolve the matter prior to the FBI's response. And we do not believe the delay occasioned by appeal will burden plaintiff since, under our order of April 6, he is not yet entitled to the material he seeks in any event. The substance of our decision with respect to the counts now challenged by the government was to *deny* plaintiff's motion for summary judgment; we did not order any material released to the plaintiff, only that the government claim whatever exemptions it seeks under the standards established in this circuit for FOIA cases. *See* n. 2 *supra.*

In presenting its motion for a stay the government asserts that the April 6 order is appealable as an injunction against the FBI. *See Miller v. Bell,* 661 F.2d 623, 625 (7th Cir.1981). However, unlike *Miller,* in the instant case we have yet to consider defendants' claims of exemption based on the documents it finds pursuant to plaintiff's FOIA request. Should the court of appeals conclude the April 6 order is not appealable, we will grant a motion to certify under 28 U.S.C. § 1292(b), because the case involves controlling questions of law which will aid in resolution of this and other lawsuits.

The order of April 6, 1982 is ordered stayed until further order of the Court of Appeals.

---

**6.** *See* 1 K. Davis, Administrative Law Treatise § 5.43, p. 100 (1978 ed. Supp.1982); R. Bouchard and J. Franklin, Guidebook to the Freedom of Information Act 21–22 (1980); *Id.* 30–31 (Supp.1981). In particular we are concerned

that our interpretation of § (b)(2) taken together with *Terkel* may create the so-called "third party anomaly" addressed at length in *Greentree,* 674 F.2d at 79.