**Frank Derek GREENTREE, Appellant,**

v.

**U. S. CUSTOMS SERVICE, et al.**

**Frank Derek GREENTREE, Appellant,**

v.

**DRUG ENFORCEMENT ADMINISTRATION, et al.**

**Nos. 81–1829, 81–1830.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 22, 1982.

Decided March 26, 1982.

Cornish F. Hitchcock, Washington, D. C., with whom Richard Manning Ricks, Washington, D. C., was on the brief, for appellant.

Douglas Letter, Atty., Dept. of Justice, Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the briefs were filed, and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellees. Kenneth M. Raisler and John C. Martin, Asst. U. S. Attys., Washington, D. C., also entered appearances, for appellees.

David C. Vladeck and Katherine A. Meyer, Washington, D. C., were on the brief, for amicus curiae, Freedom of Information Clearinghouse urging reversal.

Before BAZELON, Senior Circuit Judge, and WALD and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

This is a case of first impression in this circuit. It questions whether the Privacy

Act, 5 U.S.C. § 552a, is an exempting statute within the meaning of subsection (b)(3) ("Exemption 3") of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(3), which bars access under FOIA to information "specifically exempted from disclosure by [any other] statute."[1] Although the government (assuming a position based upon a longstanding policy), as well as appellant Greentree, urged otherwise, *see* Joint Appendix (J.A.) at 29, 39, the district court held that criminal law enforcement information exempt from disclosure under section (j)(2) of the Privacy Act, *see* n.15 *infra*, is automatically exempt under Exemption 3 of FOIA. *Greentree v. United States Customs Service*, 515 F.Supp. 1145 (D.D.C.1981); J.A. 41. The government has now reversed its position and here supports the decision of the district court. Even so, we cannot accept the district court's interpretation. Our reading of the relevant statutes and their legislative history convinces us that material unavailable under the Privacy Act is not ·per se unavailable under FOIA. Therefore, we *reverse* the decision of the district court and *remand* so that the district court may consider appellant's FOIA request independently of the Privacy Act.[2]

## I.  BACKGROUND

After being indicted and convicted in federal district court in Louisiana for attempting to import several tons of marijuana into the United States, appellant Greentree brought suit to enjoin state prosecution based upon the same events. Greentree sought to gather information relevant to his civil action by filing FOIA and Privacy Act requests with the Drug Enforcement Administration ("DEA") and the United States Customs Service ("Customs"). Relying upon specific exemptions both in FOIA (not including Exemption 3) and in the Privacy Act, DEA and Customs refused to release certain material. Pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552a(g)(1), Greentree sued in federal district court. Both agencies then moved for summary judgment. In the case against Customs, the district court, on its own initiative, requested briefs on the question of whether records protected from disclosure to the subject of the records (first party requester) under the Privacy Act are automatically exempt from disclosure to the same individual under FOIA Exemption 3. J.A. 28.

Both Greentree, J.A. 39, and the government, J.A. 29, argued to the district court that the Privacy Act was not an Exemption 3 statute. Nevertheless, the district court granted summary judgment to both DEA and Customs on the ground that the Privacy Act does qualify as a withholding statute.[3] In reaching this conclusion, the district court relied upon the statutory language and legislative history of the Privacy

---

1. Exemption 3 provides in full that access under FOIA is barred if the material sought is specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.
   5 U.S.C. § 552(b)(3).

2. It may be, *e.g.*, that appellant has, in any event, requested material unavailable under FOIA, as well as the Privacy Act. *See, e.g.*, Exemption 7, 5 U.S.C. § 552(b)(7), which exempts
   investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings,

(B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel . . . .

3. The district court therefore found it unnecessary to consider whether the material sought was exempt under the other specific exemptions of FOIA raised by the government. *See* Affidavits of Salvatore E. Caramagno and James P. Collier, J.A. 22, 68.

Act. Further, the district court's analysis was supported by decisions from the fifth[4] and seventh[5] circuits, and by *dictum* in an earlier opinion of this court.[6] Nevertheless, we cannot uphold the decision. The question presented is a difficult one,[7] but we believe that Congress did not intend the Privacy Act to bar disclosure under FOIA Exemption 3.

## II. ANALYSIS

### A. *The Statutory Scheme*

■ Both FOIA and the Privacy Act evidence Congressional concern with open government, and especially, accessibility of government records. Each seeks in different ways to respond to the potential excesses of government. Each, therefore, has its own functions and limitations. 1 K. Davis, Administrative Law Treatise § 5:2 (2d ed. 1978 & Supp. 1980); R. Bouchard & J. Franklin, Guidebook to the Freedom of Information and Privacy Acts 21–22 (1980). While the Privacy Act was designed to provide *individuals* with more control over the gathering, dissemination, and accuracy of agency information about themselves, FOIA was intended to increase the *public's* access to governmental information. *Id.* The Privacy Act limits access to any "record"[8] contained in a "system of records"[9] without the consent of the individual to whom the record pertains *unless* disclosure is requested by Congress,[10] a court,[11] an authorized agency,[12] or certain specifically qualified

---

**4.** *Painter v. Federal Bureau of Investigation,* 615 F.2d 689 (5th Cir. 1980).

**5.** *Terkel v. Kelly,* 599 F.2d 214, 216 (7th Cir. 1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980).

**6.** *Duffin v. Carlson,* 636 F.2d 709, 711 (D.C.Cir. 1980).

**7.** Aware that our decision creates a split among the circuits, *see* pp. 86–89 *infra,* we approach our task with special care.

**8.** The term "record" is defined as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph . . . ." 5 U.S.C. § 552a(a)(4).

**9.** A "system of records" means "a record in a system of records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual . . . ." 5 U.S.C. § 552a(a)(5).

**10.** 5 U.S.C. § 552a(b)(9) (restriction on disclosure inapplicable to "either House of Congress, or, to the extent of matter within its jurisdiction, any committee or subcommittee thereof, any joint committee of Congress or subcommittee of any such joint committee").

**11.** 5 U.S.C. § 552a(b)(1) (disclosure allowed when ordered by a court of competent jurisdiction).

**12.** 5 U.S.C. § 552a(b)(1), (3), (4), (6), (7), (10), permits disclosure, without first party consent,

(1) to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties;

. . . .

(3) for a routine use as defined in subsection (à)(7) of this section and described under subsection (e)(4)(D) of this section;

(4) to the Bureau of the Census for purposes of planning or carrying out a census or survey or related activity pursuant to the provisions of title 13;

. . . .

(6) to the National Archives of the United States as a record which has sufficient historical or other value to warrant its continued preservation by the United States Government, or for evaluation by the Administrator of General Services or his designee to determine whether the record has such value;

(7) to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought;

. . . .

(10) to the Comptroller General, or any of his authorized representatives, in the course of the performance of the duties of the General Accounting Office . . . .

persons,[13] or is required by FOIA.[14] Moreover, even first party access is limited under the Privacy Act for reasons of, *inter*

*alia,* national security and law enforcement.[15] Similarly, public access to information under FOIA is also limited; excluded

**13.** *See* 5 U.S.C. § 552a(b)(5) and (8), which exempt from the Privacy Act's access limitations disclosure

(5) to a recipient who has provided the agency with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable; [and]

. . . .

(8) to a person pursuant to a showing of compelling circumstances affecting the health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual . . . .

**14.** 5 U.S.C. § 552a(b)(2) (expressly insuring public access to any material available under FOIA). *Cf.* 5 U.S.C. § 552a(g) ("No agency shall rely on any exemption contained in section 552 of this title [FOIA] to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section.").

**15.** 5 U.S.C. § 552a(j) and (k):

(j) General exemptions.—The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is—

(1) maintained by the Central Intelligence Agency; or

(2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

At the time rules are adopted under this subsection, the agency shall include in the statement required under section 553(c) of this title,

the reasons why the system of records is to be exempted from a provision of this section.

(k) Specific exemptions.—The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from subsections (c)(3), (d), (e)(1), (e)(4)(G), (H), and (I) and (f) of this section if the system of records is—

(1) subject to the provisions of section 552(b)(1) of this title;

(2) investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of this section: *Provided, however,* That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence;

(3) maintained in connection with providing protective services to the President of the United States or other individuals pursuant to section 3056 of title 18;

(4) required by statute to be maintained and used solely as statistical records;

(5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, military service, Federal contracts, or access to classified information, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence;

(6) testing or examination material used solely to determine individual qualifications for appointment or promotion in the Federal service the disclosure of which would compromise the objectivity or fairness of the testing or examination process; or

(7) evaluation material used to determine potential for promotion in the armed services, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the

from FOIA's disclosure requirements are national security and internal agency matters, matters "specifically exempt" by other statutes, confidential business information, deliberative internal communications within the executive branch, information about individuals disclosure of which would constitute a "clearly unwarranted invasion of personal privacy," certain investigatory records compiled for law enforcement purposes, records relating to the examination of financial institutions and records containing oil well information.[16]

It is readily apparent from the foregoing review that the Privacy Act and FOIA substantially overlap. However, it is apparent also that the two statutes are not completely coextensive; each provides or limits access to material not opened or closed by the other. For example, while both restrict access to investigatory material, they do so to a different degree and under different conditions. *Compare* 5 U.S.C. § 552(b)(7)

*with* 5 U.S.C. §§ 552a(j)(2) and (k)(2) and (5).

The present case questions the relationship between section (j)(2) of the Privacy Act and Exemption 3 of FOIA. After holding that the material sought was unavailable to Greentree under section (j)(2) of the Privacy Act, the district court began its statutory analysis of this question by examining the language of section (b)(2) of the Privacy Act:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—
>
> . . . .
>
> (2) required under section 552 of this title [FOIA]
>
> . . . .

5 U.S.C. § 552a(b)(2). The court summarily rejected the argument that this provision

---

Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence.

At the time rules are adopted under this subsection, the agency shall include in the statement required under section 553(c) of this title, the reasons why the system of records is to be exempted from a provision of this section.

16. 5 U.S.C. § 552(b) provides that FOIA does not "apply" to matters that are:

(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(2) related solely to the internal personnel rules and practices of an agency;

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5) inter-agency or intra-agency memorandums or letters which would not be available

by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;

(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(9) geological and geophysical information and data, including maps, concerning wells.

indicated that the Privacy Act was not designed to affect obligations under FOIA, concluding that the notion merely "begs the question ... of whether information exempt under the Privacy Act can, in fact, be required to be disclosed under FOIA." *Greentree*, 515 F.Supp. at 1147. For the district court, that question was resolved by FOIA Exemption 3.

Since the Privacy Act does refer to particular types of matters to be withheld— all material generated by the exempt systems—the Privacy Act is, by the plain language of FOIA, within the (b)(3) statutory exemption.

*Id.* at 1147.

Our statutory analysis both begins at a different point and reaches a different conclusion. Under our analysis, there is no need to determine whether section (j)(2) of the Privacy Act meets any of the alternative qualifications of an Exemption 3 statute.[17] Further, we see no need to dwell long upon the *apparent* circularity of section (b)(2) of the Privacy Act in mandating disclosure of only that which is "required" by FOIA (including its Exemption 3).[18] Frankly, we are unimpressed with the discovery that section (b)(2) is somewhat circular. Why was that section inserted into the Privacy Act at all if that act were meant to be a FOIA 3 withholding statute? We must conclude, contrary to the district court, that section (b)(2) of the Privacy Act represents a Congressional mandate that the Privacy Act *not* be used as a barrier to FOIA access.

The government acknowledges that section (b)(2) of the Privacy Act does safeguard FOIA access to the public, but it asks us to deny that access to first party reques-

ter. However, we are not at liberty to limit the safeguards of (b)(2), which extend to requests by "any person." Our understanding of the extent of (b)(2)'s coverage is reenforced by the very language of section (j) of the Privacy Act. The authority granted an agency head by that section is, with exceptions not relevant here, specifically limited to exempting "any system of records within the agency from any part of *this* section ...." 5 U.S.C. § 552a(j) (emphasis added). In context, the words "this section" can only refer to section 552a, *i.e.*, the Privacy Act. The specific exceptions to the general exemption, "subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), and (11), and (i)," are subsections of the Privacy Act.[19] This portion of the statute thus appears to be self-contained: the general exemptions, as well as the specific exceptions, limit only other provisions of the Privacy Act itself.

Further, were we to accept the government's argument, a so-called "third party anomaly" would result. That is, a third party might gain access to material under FOIA about an individual unavailable to that individual himself, because of Privacy Act section (j)(2). Such a result would comport with neither logic nor common sense. If such material were allowed into the public domain, how could it be kept from the party whom it concerned? Obviously, any such barrier to first party access could easily be circumvented by the first party's simply locating someone else to act as a third party FOIA requester.

The government acknowledges the anomaly, but suggests that it would arise too rarely to justify concern:

**17.** *See generally,* Note, *The Effect of the 1976 Amendment to Exemption Three of the Freedom of Information Act,* 76 Colum.L.Rev. 1028, 1043–46 (1976).

**18.** Indeed, the Senate Staff, considering a similar problem of "circularity" between the Privacy Act and Exemption 6 prophetically observed:

Since the FOI Act itself authorizes the refusal of disclosure where this would constitute an "unwarranted invasion of privacy" the privacy bill's disclaimer of any intent to affect FOI

is circular. In the face of the disclaimer, the government's efforts to mesh the two bills when faced with litigation over the nondisclosure of records to protect privacy may meet considerable difficulty.

Memorandum, *reprinted in* 120 Cong.Rec. 40412 Legislative History of the Privacy Act of 1974, S. 3418 (Public Law 93–579), Source Book on Privacy 875 (1976) (hereinafter Source Book).

**19.** The specific exemption section, 5 U.S.C. § 552a(k), is similarly limited. *See* n.15 *supra.*

In the vast majority of cases, a third party would be prevented from obtaining access to records about another individual covered by the Privacy Act (particularly if they are law enforcement records) because of the FOIA privacy exemptions (FOIA Exemptions 6 and 7(c)). Under the balancing test used to implement these exemptions, such an invasion of privacy is permitted only where it is outweighed by a countervailing strong public interest in disclosure. *Dept. of Air Force v. Rose*, 425 U.S. 352, 370–76 [96 S.Ct. 1592, 1603–06, 48 L.Ed.2d 11] (1976). Moreover, a "third party anomaly" can only occur where records can and actually have been exempted from access under the Privacy Act, but are nonetheless available through the FOIA. Thus, putting aside its value for academic discussion, the "third party anomaly" is in actuality a minor problem at best.

Government's Brief at 36 n.18.

We find both parts of the government's response unsatisfactory. First, we are not convinced that by balancing "an invasion of privacy" against a "strong public interest in disclosure" under FOIA, third party access will be barred when the third party is hand chosen by a first party who has, in effect, waived all privacy interests. Even the Privacy Act allows third party access to material, normally protected from public access, with the consent of the individual to whom the material pertains. 5 U.S.C. § 552a(b). Second, while we agree that the anomaly would occur only when records were exempt under the Privacy Act but publicly available under FOIA—indeed, as we understand it, that is the definition of the "third party anomaly"—we are not com-

forted by the reminder. Since the district court did not address itself to whether the material sought here would be publicly available under FOIA, we must assume that we are now confronted with a rare case. The "third party anomaly," therefore, does indeed suggest to us that Congress could not have intended section (j)(2) of the Privacy Act to serve as a withholding statute under FOIA Exemption 3.

The district court and the government, however, have raised a different "anomaly," which they say will result if an individual denied access to his records under section (j)(2) of the Privacy Act is allowed to obtain at least some of that material under FOIA.[20] By allowing first party requesters to pursue alternative access routes, it is suggested that section (j)(2) would be "render[ed] meaningless." *Greentree*, 515 F.Supp. at 1148; Government's Brief at 17. We consider this to be a false anomaly, readily recognized as such by noting that the exemptions of the Privacy Act and FOIA differ in purpose and, therefore, in scope. Although both section (j)(2) of the Privacy Act and Exemption 7 of FOIA limit access to law enforcement records, they do so to a different extent. Unless section (j)(2) is implemented, first party access under the Privacy Act to law enforcement records would be broader than such access under FOIA. Access under FOIA can be restricted if production of records would

(A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case

---

**20.** In making its argument, the Government draws upon *dictum* in a recent decision of this court, *per* MacKinnon, J.:

Congress indicated in its latest enactment, i.e., the Privacy Act, that "it would *not* be appropriate to allow individuals to see their own intelligence or investigative files" containing "sensitive and usually confidential information." . . . From the Privacy Act's prohibition it can be strongly argued that Congress foreclosed disclosure of the same confidential information under the Freedom of Information Act. Why would Congress in one

Act categorically prohibit disclosure of information furnished by informants and in another Act compel disclosure of the same confidential information?

*Duffin v. Carlson*, 636 F.2d 709, 711 (D.C.Cir. 1980). While we cannot accept the government's ultimate argument that anything exempted from first party access under the Privacy Act is also exempted from FOIA access, we do agree that confidential information supplied by informants which is inaccessible under the Privacy Act may be inaccessible under FOIA, 5 U.S.C. § 552(b)(7)(D), as well.

of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel. . . .

5 U.S.C. § 552(b)(7). On the other hand, although personal privacy, 5 U.S.C. § 552a(b), and confidential sources, 5 U.S.C. § 552a(k)(2), could be protected under the Privacy Act even if section (j)(2) exempting authority were not exercised, a law enforcement agency might be subject to other onerous and, in some instance, impractical requirements. For instance, sections (e)(1)–(3), (e)(4)(G)–(I), (e)(5) and (e)(8) of the Privacy Act would impose the following requirements on law enforcement agencies: (1) to maintain only such records about an individual as necessary to accomplish a purpose required by statute or executive order, (2) to get information directly from the individual to the greatest extent practicable when information may be adverse, (3) when it seeks information from an individual, to tell him its authority and whether disclosure is mandatory or voluntary, the purpose for which the information will be used, the routine uses which may be made of it, and the effects on him of not providing the information, (4) to maintain records accurately and fairly, and (5) to try to serve notice on an individual when any record about him is disclosed under compulsory legal process.[21] Considering the wider access and administrative rigors of the Privacy Act, we have no difficulty understanding why Congress allowed law enforcement agencies to restrict individual access to whole systems of records under the Privacy Act, while allowing the public, including the first party, more limited access to some of the same material under FOIA.

## B. The Legislative History

We agree with the district court that the legislative history of the Privacy Act is not without ambiguities. Contrary to the district court, however, we feel that, on balance, the legislative history supports our interpretation that section (j)(2) of the Privacy Act ought not be considered a FOIA withholding statute for first party requesters.

In support of its decision that section (j)(2) was a FOIA Exemption 3 statute, the district court relied on the fact that

[A] provision [S. 3418, 93d Cong., 2d Sess., § 205(b) (1974)] of an earlier bill passed by the Senate [, which] clearly prohibited use of the Privacy Act to withhold information disclosable under other statutes, including, presumably, FOIA . . . [,] was deleted from the final version of the bill, suggesting that Congress did not intend to prohibit use of the Privacy Act for such purposes.

*Greentree*, 515 F.Supp. at 1148.

We do not agree with the district court's reading of the legislative history. Our reading indicates that throughout its consideration of the Privacy Act, the Senate struggled to hold separate the Privacy Act and FOIA, and further, that that effort was ultimately successful.

The privacy bill that emerged from the Senate Committee contained two provisions that could be read to safeguard disclosure rights under FOIA: (1) Section 205(b), which remained in the final Senate bill, prohibited agencies from "withholding . . . any personal information which is required to be disclosed by law or any regulation thereunder," *reprinted in* Legislative History of the Privacy Act of 1974, S. 3418 (Public Law 93–579), Source Book on Privacy 143 (1976) (hereinafter Source Book); and (2) Section 202(c), subsequently eliminated by a "perfecting amendment," Source Book at 765, which provided that certain requirements for disclosure did "not apply when

---

**21.** Section (q) of the Privacy Act, 5 U.S.C. § 552a(q), forbids an agency from relying on any of the censoring devices of FOIA. Therefore unless subsection (j)(2) authority is exercised, a first party will have far greater access to records about himself under the Privacy Act than under FOIA.

disclosure would be required or permitted pursuant to ... [the] Freedom of Information Act ...." *Reprinted in* Source Book at 139. The Senate Report explained that [Section 202(c)] was included to meet the objections of press and media representatives that the statutory right of access to public records and the right to disclosure of government information might be defeated if such restrictions were to be placed on the public and press. The Committee believed it would be unreasonable and contrary to the spirit of the Freedom of Information Act to attempt to keep an accounting of the nature and purpose of access and disclosures involving the press and public or to impose guarantees of security and confidentiality on the data they acquire.

While the Committee intends in this legislation to implement the guarantees of individual privacy, it also intends to make available to the press and public all possible information concerning the operations of the Federal Government in order to prevent secret data banks and unauthorized investigative programs on Americans.

S.Rep.No.1183, 93d Cong., 2d Sess. 71 (1974), U.S.Code Cong. & Admin.News 1974, p. 6916, 6985, *reprinted in* Source Book at 224. Accompanying section 202(c) was a provision that prohibited agencies from relying upon FOIA to withhold information under the Privacy Act, S. 3418, 93d Cong., 2d Sess., § 205(a), *reprinted in* Source Book at 143. That provision, which survived at section 205a(q) of the final Act, was explained by the Senate Report as follows:

*Subsection 205(a).* Shows the Committee's intent that the exemptions provided in the Freedom of Information Act to the required disclosure of Federal information on certain subjects, and that permitted for protection of personal privacy may not be used as authority to deny an individual personal information otherwise available under this Act.

S.Rep.No.1183, 93d Cong., 2d Sess. 71, 77 (1974), U.S.Code Cong. & Admin.News 1974, p. 6991, *reprinted in* Source Book at 230. These provisions in the Senate bill clearly indicate to us that the Senate wanted to insure that FOIA and the Privacy Act not interfere with one another. On the one hand, the Privacy Act's limits or conditions on disclosure were not to impede access under FOIA, section 205(b), and on the other, FOIA's exemptions were not to limit the availability of personal information accessible under the Privacy Act, section 205(a).

The privacy bill that emerged from the House Committee, was tilted more toward securing personal privacy than the Senate bill. The House bill, H.R. 16373, 93d Cong., 2d Sess., § 552a(b) (1974), stated that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains ...." *Reprinted in* Source Book at 279. That provision, identical to the one now found in the Privacy Act, 5 U.S.C. 552a(b), did not exempt information required to be disclosed under FOIA. However, the House Committee, recognizing the impact this legislation would have on FOIA by making "all individually identifiable information in Government files exempt from public disclosure," [22] expressed its desire that agencies continue to make some kinds of individually-identifiable records available to the public:

[The Committee] believes that the public interest requires the disclosure of some personal information. Examples of such information are certain data about government licensees, and the names, titles, salaries, and duty stations of most Federal employees. The Committee merely intends that agencies consider the disclosure of this type of information on a category-by-category basis and allow by

---

22. H.R.Rep.No.1416, 93d Cong., 2d Sess. 13 (1974), *reprinted in* Source Book at 306. The Report explained that "[s]uch information could be made available to the public only

pursuant to rules published by agencies in the Federal Register permitting the transfer of particular data to persons other than the individuals to whom they pertain."

published rule only those disclosures which would not violate the spirit of the Freedom of Information Act by constituting "clearly unwarranted invasions of personal privacy."

H.R.Rep.No.1416, 93d Cong., 2d Sess. 13 (1974), *reprinted in* Source Book at 306.

After negotiations between the House and Senate, the House bill was adopted, but with two significant amendments. One amendment—now section 552a(b)(2)—modified the House's restriction on disclosure so that the Privacy Act would not interfere with public access under FOIA. The other amendment—now section 552a(q)—mirrored 552a(b)(2) by prohibiting agencies from relying upon FOIA to withhold any record otherwise available under the Privacy Act. *See* n.14 *supra.* The compromise was explained to both Houses of Congress in this way:

> The compromise amendment would add an additional condition of disclosure to the House bill which prohibits disclosure without written request of an individual unless disclosure of the record would be pursuant to Section 552 of the Freedom of Information Act. This compromise is designed to preserve the status quo as interpreted by the courts regarding the disclosure of personal information under that section.

> A related amendment taken from the Senate bill would prohibit any agency from relying upon any exemption contained in Section 552 to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section.

Source Book at 861 (explained to Senate by Senator Ervin), 989 (explained to House by Representative Moorhead). The net effect of the compromise was to reinstate the essence of the Senate Committee's original provisions, sections 202(c) and 205(a) and (b), holding separate each act's exemptions from disclosure. And we find no reason to rule that first party requesters were intended to be an exception to that general Congressional "hold separate" policy. In the absence of persuasive evidence to the contrary, we conclude from this review that Congress meant to continue business as usual with respect to access under FOIA.[23]

Finally, we cannot accept the district court's announcement that "[s]ince the Privacy Act was passed after the amendments to (b)(7) of FOIA, any conflict between the two sections must be resolved in favor of the Privacy Act." *Greentree,* 515 F.Supp. at 1148. The temporal relationship of the FOIA Exemption 7 amendment and the Privacy Act suggests to us that no such conflict exists. The FOIA Exemption 7 amendment, which increased access to some of the same law enforcement records that might be totally exempt from access under Privacy Act section (j), was passed only a few weeks before the Privacy Act. *See* 1974 U.S.Code Cong. & Admin.News 6267, 6290–92. Indeed, Congress was considering the Privacy Act while it was preparing to override President Ford's veto of the 1974 FOIA amendments. *See* Source Book at 887 (Remarks of Rep. Erlenborn: "I think it is rather fitting that this [Privacy] bill comes to the floor today on the same day that we considered a motion to override and have overridden the President's veto of the Freedom of Information Act."). Presi-

---

**23.** As evidence to the contrary, the government cites statements made during the floor debates indicating a desire to keep certain intelligence and investigative files away from the individual to whom the files pertain. Further, the government relies upon the placement of section (b)(2) among Privacy Act provisions concerning public disclosure. Government's Brief at 20–23, 33. That evidence has been considered above and here we need reiterate only that (1) FOIA also limits access to national intelligence and investigatory files, and (2) that while it may be accurate to say that Congress was unaware that first parties might invoke section (b)(2) of the Privacy Act to secure FOIA access to records unavailable to them under section (j)(2) of the Privacy Act and that the right of public access to personal information was the preeminent concern of section (b)(2), it is apparent also that Congress meant to "preserve the status quo ... regarding the disclosure of personal information" and refused to place the Privacy Act in the path of "any person" seeking access to information under FOIA. *See* p. 81 *supra.*

dent Ford's veto was, for the most part, a response to the increased accessibility of national security and law enforcement documents allowed by these 1974 amendments of Exemptions 1 and 7. 10 Weekly Comp. of Pres.Doc. 1318 (1974). Therefore, we are hard pressed to accept an interpretation of the Privacy Act that in effect repeals, for first party requesters, those amendments only a few weeks after they were enacted over a Presidential veto. Repeal by implication is not generally favored; less so in this instance.

## C. *Post-Passage Developments*[24]

Shortly before the Privacy Act took effect, Deputy Assistant Attorney General Mary C. Lawton of the Office of Legal Counsel advised the Internal Revenue Service that the Privacy Act was the exclusive means available to an individual who sought information about himself. Source Book at 1177–78. The Office of Management and Budget—which was required by section 6 of the Privacy Act to develop guidelines and regulations for agencies implementing the Act and to provide assistance and oversight of the Act's implementation—circulated Lawton's opinion to federal agencies. *Id.* at 1178. When it came to the attention of Senator Edward Kennedy, the Senator forwarded a strong letter of protest to Attorney General Edward Levi. Kennedy charged that the opinion was "pernicious and destructive." His understanding was that

> access under the Privacy Act is to be complete and not subject to FOIA exemptions, where the Privacy Act grants access. But where the Privacy Act does not grant access, the FOIA—and its exemptions—apply.

*Id.* at 1180. Senator Kennedy attached to his letter of protest a Congressional Research Service Study for the Senate Subcommittee on Administrative Practice and Procedure on the relationship between FOIA and the Privacy Act, which took issue

with the position taken by Deputy Assistant Attorney General Lawton. That study concluded:

> There is nothing in the terms of the Privacy Act or its legislative history which indicates that the Privacy Act is the exclusive means by which an individual can gain access to his own records contained in a system of records. Many of the so-called "inconsistencies" listed in the Justice Department's letter have been reconciled with the FOIA in the OMB guidelines issued pursuant to the Privacy Act. Furthermore, they do not seem to constitute the clear repugnancies which are necessary before a court will hold that one statute has implicitly repealed or superseded another.
>
> The primary purpose of the Privacy Act is the protection of individual privacy by controlling the collection, management, and dissemination of individually identifiable records. Access to such records by the individual is one method by which control is achieved and is a necessary adjunct to the accurate maintenance of records. It flies in the face of the whole legislative effort in this area to construe the Privacy Act as a backhanded method to limit individual access to records while at the same time preserving potentially greater access rights to third parties.

*Id.* at 1187.

Until this appeal, the dispute had resolved itself into a mere matter of form. Deputy Attorney General Harold R. Tyler, Jr., replying to Senator Kennedy for the Attorney General, admitted that he himself and others in the Department of Justice had "substantially similar" "concern[s]" about the Lawton opinion and so had drafted a Privacy Act regulation, *see id.* at 1187–88 (draft form), which, as slightly revised, now provides:

> Any request by an individual for information pertaining to himself shall be processed solely pursuant to this Subpart

24. The post-passage legislative and administrative material discussed below was significant enough to cause Senator Kennedy to have it reprinted on the pages of the Congressional Record. *See* Source Book at 1173–88.

D. To the extent that the individual seeks access to records from systems of records which have been exempted from the provisions of the Privacy Act, the individual shall receive, in addition to access to those records he is entitled to receive under the Privacy Act and as a matter of discretion as set forth in paragraph (a) of this section, access to all records within the scope of his request to which he would have been entitled under the Freedom of Information Act, 5 U.S.C. 552, but for the enactment of the Privacy Act and the exemption of the pertinent systems of records pursuant thereto.

28 C.F.R. § 16.57(b). That regulation was, however, accompanied by a statement claiming that release of records beyond those mandated by the Privacy Act was at the sole discretion of the Associate Attorney General.[25] The government now seeks to recapture its purported authority. The Lawton letter and the "discretionary" nature of the regulation are cited as "contemporaneous construction by the Justice Department . . . that the Privacy Act exemptions could not be circumvented through

use of the FOIA." Government's Brief at 40.

Although agency interpretations are entitled to judicial respect, courts need not be oblivious to the context in which those interpretations are made.[26] In the case of major parts of the Privacy Act, as well as the FOIA amendments, the executive branch had opposed passage. See, e.g., Source Book at 772–75. The post-passage events reviewed above may illustrate executive department efforts to moderate the impact of an unwelcome enactment. Of course, we are not unaware that the post-passage views of members of Congress and Congressional staffs may also be distorted by conflicting interests. See Zipes v. Trans World Airlines, Inc., — U.S. —, —, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). We are, therefore, wary of placing too much reliance on the Lawton-Kennedy-Tyler dialogue. More impressive to us is the fact that the predominant government policy since initial implementation until this appeal[27] has been to allow an individual to seek access to information about himself through both the Privacy Act and FOIA.[28]

---

**25.** 28 C.F.R. § 16.57(a):
Issuance of this section and actions considered or taken pursuant hereto are not to be deemed a waiver of the Government's position that the materials in question are subject to all of the exemptions contained in the Privacy Act. By providing for exemptions in the Act, Congress conferred upon each agency the option, at the discretion of the agency, to grant or deny access to exempt materials unless prohibited from doing so by any other provision of law. Releases of records under this section, beyond those mandated by the Privacy Act, are at the sole discretion of the Associate Attorney General and of those persons to whom authority hereunder may be delegated. Authority to effect such discretionary releases of records and to deny requests for those records as an initial matter is hereby delegated to the appropriate system managers as per the Notices of Systems of Records published in 40 Federal Register 167, pages 38703–38801 (August 27, 1975).

**26.** *Office of Consumers' Counsel v. Federal Energy Regulatory Comm'n*, 655 F.2d 1132, 1133, 1141 (D.C.Cir.1980); *Public Service Comm'n of New York v. Federal Energy Regulatory Comm'n*, 642 F.2d 1335, 1342 (D.C.Cir.1980), *cert. denied*, — U.S. —, 102 S.Ct. 360, 70 L.Ed.2d 189 (1981).

**27.** The Government's Brief to the district court, J.A. 29, 35, supported the position that the Privacy Act was not an Exemption 3 statute, citing "the Government's uniform and long-standing practice" to the contrary. It also argued, J.A. 96, that:
It would be anomalous indeed for Congress to override a presidential veto, which was in part based on Congress' narrowing of exemption 7, only to reinstate forty days later (via the Privacy Act) the discretionary power to deny total access to investigatory material. There is no indication whatsoever in the Legislative history of the Privacy Act to indicate that Congress intended such an abrupt reversal of its recent narrowing of exemption 7.

**28.** Pursuant to Rule 28(j) of the Fed.R.App. Proc., the government has informed us that the Office of Management and Budget ("OMB") is currently revising its guidelines to state that the Privacy Act should be considered a FOIA Exemption 3 statute. At present, OMB's policy is consistent with the policy of 28 C.F.R. § 16.57(b), *i.e.*, an individual's access to material about himself may be by way of the Privacy Act or FOIA:
In some instances under the Privacy Act an agency may (1) exempt a system of records (or a portion thereof) from access by individuals in accordance with the general or specific exemptions (subsection (j) or (k)); or (2)

D. *Case Law*

Although decisions in two other circuits, on which the district court relied, have re-deny a request for access to records compiled in reasonable anticipation of a civil action or proceeding or archival records (subsection (d)(5) or (1)). In a few instances the exemption from disclosure under the Privacy Act may be interpreted to be broader than the Freedom of Information Act (5 U.S.C. 552). In such instances the Privacy Act should not be used to deny access to information about an individual which would otherwise have been *required* to be disclosed to that individual under the Freedom of Information Act.

. . . .

It is our view that agencies should treat requests by individuals for information pertaining to themselves which specify either the FOIA or the Privacy Act (but not both) under the procedures established pursuant to the Act specified in the request. When the request specifies, and may be processed under, both the FOIA and the Privacy Act, or specifies neither Act, Privacy Act procedures should be employed. The individual should be advised, however, that the agency has elected to use Privacy Act procedures, of the existence and the general effect of the Freedom of Information Act, and of the differences, if any, between the agency's procedures under the two Acts (e.g., fees, time limits, access and appeals).

The net effect of this approach should be to assure the individuals do not, as a consequence of the Privacy Act, have less access to information pertaining to themselves than they had prior to its enactment.

40 Fed.Reg. 56742–43.

Other agencies and individuals prominently involved in the passage and implementation of the Privacy Act and FOIA have expressed a similar point of view—that the Privacy Act ought not operate as a FOIA Exemption 3 statute. Reporting to the House of Representatives on a Library of Congress study on the administration of FOIA, Representative Bella Abzug informed her colleagues that unfortunately "seven executive branch entities . . . [have] 'cited the Privacy Act 146 times when invoking the FOI Act exemption pertaining to statutory prohibitions.' " "Yet," said Abzug, "the Privacy Act specifically states that it was not intended to restrict access to records available under the Freedom of Information Act (5 U.S.C. 552a(b)(2))." 122 Cong.Rec. 26447, 26448 (1976). The Report submitted to the House by Abzug declared that Exemption 3 use of the Privacy Act was improper. *Id.* at 26450. (*The Administration of the Freedom of Information Act: An Analysis of the Executive Branch Annual Reports for 1975*). It noted optimistically, however, that one of the seven entities—the Department of Labor—which had invoked the Privacy Act as an Exemption 3

solved questions similar to this one in a different manner, neither has explicated a convincing rationale. The Seventh Circuit statute, had recently recognized that the practice was "improper." *Id.* Further, the Privacy Protection Study Commission, established by section 5 of the Privacy Act to study the functioning of the Act, indicated a similar understanding of the relationship between the Privacy Act and FOIA:

An individual seeking access to an investigatory file, for example, may be able to obtain much broader access if he requests it under the FOIA, because the corresponding PA exemption applies to entire systems of records rather than to records or portions of the records they contain.

*Report of the Privacy Protection Study Commission, Privacy Act of 1974: An Assessment*, App. 4 at 37 (1977). Also, the Staff of the Senate Subcommittee on Administrative Practice and Procedure reported on violations of FOIA, including "improper reliance on the Privacy Act as statutory authority to withhold information under FOIA exemption 3." Staff of Senate Subcommittee on Administrative Practice and Procedure, Committee on the Judiciary, 95th Cong., 2d Sess., *Report on Oversight Hearings on Agency Implementation of the 1974 Amendments to the Freedom of Information Act*, at 123 (Comm. Print 1980). The Staff noted that "[t]he Privacy Act . . . was never intended to restrict access to reports under FOIA." *Id.* at n.76. In support, the *Annual Report, 1976* of the Congressional Research Service was cited:

An equally disturbing phenomenon, which also occurred in 1975 and 1976, is agency reliance upon the Privacy Act to withhold information in conjunction with the intervening statute exemption of the Freedom of Information law. It appears that the Justice Department, Federal Power Commission, National Aeronautics and Space Administration, and the National Science Foundation engaged in this practice in a few isolated instances. It should be quite apparent by this time that the Privacy Act does not constitute authority to withhold any records sought under the provisions of the FOI statute. The Freedom of Information Act recognizes the unwarranted invasion of personal privacy as a basis (5 U.S.C. 552(b)(6)) for exempting information from disclosure, but does not rely upon the language or authority of the Privacy Act."

*Id., citing Annual Report, 1976* at 25. Thus, the prevailing understanding among those intimately involved in the implementation of the Privacy Act—exclusive of the executive branch—was that the Privacy Act and FOIA were independent bases for access by individuals to their own records.

in *Terkel v. Kelly*, 599 F.2d 214 (7th Cir. 1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980), interpreted section (k)(2) of the Privacy Act to exempt information from required disclosure under FOIA, concluding:

> Although the Freedom of Information Act does not contain a comparable exemption, we agree with the lower court that the two statutes must be read together, and that the Freedom of Information Act cannot compel the disclosure of information that the Privacy Act clearly contemplates to be exempt.

*Id.* at 216. Unfortunately, we do not have the benefit of the court's statutory analysis, review of the legislative history or any other aspect of its reasoning. Had such reasons been disclosed, we would certainly have paid them close attention.[29]

**29.** Professor Davis has criticized the decision for failing to take careful note of the statutory wording:

> The court quoted (k)(5), but in doing so it deleted the words that would have prevented it from making its error. The crucial words the court deleted are here italicized: "The head of any agency may promulgate rules ... to exempt any system of records within the agency from [specified] subsections ... *of this section.*" The exemption is from parts of a section of the PA, and the court assumed it to be from a disclosure requirement of the FOIA.

1 K. Davis, Administrative Law Treatise § 5:43, p. 53 (1978 ed. Supp. 1980). On the more general question whether the Privacy Act is an Exemption 3 statute, legal scholars uniformly answer no. *See, e.g.*, Guidebook to the Freedom of Information and Privacy Acts 21 (P. Bouchard and J. Franklin, eds. 1980) ("An individual may utilize either the Privacy Act or FOIA or both to seek access to information about himself in agency records, and is entitled to the cumulative total of access rights under the two Acts."); 2 J. O'Reilly, Federal Information Disclosure, Procedure, Forms and the Law § 20.13 [20-30-31] (1981 ed.) (after rehearsing the history of the Kennedy-Lawton debate, O'Reilly observed:

> Kennedy won the debate, but Justice conceded the issue in its discretion, in a manner which Kennedy said "bordered on the irresponsible".[21] The precedential effect of a formal reversal was lacking, but Justice amended its regulations to provide that any individual's request for records would be dealt with under whichever statute provided the greater access, if the request was made by an individual for his own files.[22] The FOIA provisions which give greater access rights than the corresponding provisions of the Privacy Act would be triggered automatically whenever a request could fall within both of the statutes.

A novel construction of the Privacy Act FOIA interrelationship was suggested in 1979. The Government Printing Office denied access to the Code of Federal Regulations mailing list on the grounds that the Privacy Act was a (b)(3) specific exemption to the Freedom of Information Act.[22a] The history of the Privacy Act and of the 1976 FOIA amendments is silent on this claim, but it appears to be wholly inconsistent with the purposes of both statutes. The Privacy Act was not intended to be an excuse for agency withholding under the FOIA, and the GPO approach remains to be tested in the courts, where it may well lose.

The case law since enactment of the Privacy Act has not added much to the substance of the intermeshing of the two statutes' operations. Several courts have addressed the interaction, in the context of discovery and similar motions, and have found that the Privacy Act adds nothing to the rights of litigating parties which the FOIA did not already provide.[23]

A startling difference of opinion between the early commentators and the staff of the Privacy Protection Study Commission developed when that Commission's final report found that the two Acts "mesh well", and that "there are no statutory conflicts".[24] The PPSC rejected the legal literature's criticism as "overly simplistic" and "an erroneous formulation of the relationship between the two statutes".[25] Time will tell which view was "overly simplistic", though few cases have faced the issues. The Commission Report concluded that some practical problems would arise but that an agency merely lost the discretion to disclose (b)(6)-exempt information once it had determined that it was exempt.[26] The simplicity in the Commission staff's reading of the conflict or nonconflict lies in the recognition that few if any agency managers would knowingly disclose personal privacy types of data, such as medical records, which would be a *clearly unwarranted invasion* of the file subject's recognized rights if disclosed! Case-by-case judgments will have to be made, and the Privacy Act will probably be seen by legal scholars of the future as an impediment to the rational development of (b)(6) policies and cases.

21 [121 Cong Rec S] 18146 [(daily ed. Oct. 9, 1975).]

The Fifth Circuit in *Painter v. Federal Bureau of Investigation*, 615 F.2d 689, 691 & n.3 (5th Cir. 1980), relied heavily upon *Terkel* to hold section 552a(k)(5) a FOIA Exemption 3 statute. In so holding, the court reversed a district court decision containing a more detailed review of the legislative history of the Privacy Act.[30]

We have been persuaded to break stride with the Fifth and Seventh Circuits by the language and legislative history of the Privacy Act. We have sought a coherent statutory relationship between the Privacy Act and FOIA that reflects a steady intent by Congress throughout the short period between enactment of the Privacy Act and the 1974 FOIA amendments. That intent was to open access to first party requesters under the Privacy Act without closing existing avenues of access under contemporaneously enacted and liberalizing amendments to FOIA. In reality, however, our departure from the position of other circuits may turn out to be of more academic interest than practical consequence. Upon remand, it may well be found that the material sought by Greentree is unavailable to him (or anyone else) under FOIA's Exemption 7 as well as the Privacy Act. Whether this dispute deserves such an anticlimactical ending, we leave to the district court.

[22] See 28 CFR § 16.57[.]

[22a] Letter of GPO Order Div. Chief L Reed to author (June 15, 1979)[.]

[23] *Sears Roebuck & Co. v. GSA*, 553 F.2d 1378 (D C Cir.1977); *U S v Brown* 562 F.2d 1144 (9th Cir. 1977); *U S v Murdock* 548 F2d 599 (5th Cir. 1977)[.]

[24] Privacy Comm Report at 520[.]

[25] Id.[.]

[26] Id., and it conceded that other private information would be nonexempt[.]

O'Reilly also took note of the district court opinion in this case and stated:

An extensive treatment of the issue of specific exemption from the Freedom of Information Act for Privacy Act materials appears in *Greentree v. U. S. Customs Service*, 515 F.Supp. 1145 (D C D C 1981). That court overruled both the agency and the requester and specifically held that the Privacy Act is an exemption (3) statute. (5 U.S.C. § 552(b)(3).) In doing so, it overruled administrative opinions and even this text to reach its conclusion that (b)(3) applies. The appellate outcome of this case will be very interesting.);

*see also*, Hulett, *Privacy and the Freedom of Information Act*, 27 Adm.L.Rev. 275, 288 (1975); Project, *Government Information and the Rights of Citizens*, 73 Mich.L.Rev. 971, 1337 (1975); Note, *The Privacy Act of 1974: An Overview*, 1976 Duke L.J. 301, 312; Note, *FOIA-Privacy Act Interface*, 8 Loyola Univ.L.J. 568, 586–93 (1977).

**30.** The district court found:

Far from indicating that the Privacy Act was intended to shield materials from public disclosure which were otherwise accessible under the FOIA, the legislative history of the former states that the statute "is designed to preserve the status quo as interpreted by the courts regarding the disclosure of personal information under that section (FOIA)." Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, 120 *Cong.Rec.* 12,243, 12,244 (daily ed. Dec. 18, 1974); *id.* at 21,815, 21,817 (daily ed. Dec. 17, 1974). It thus appears that the Privacy Act provides rights to the individual with respect to his records beyond the point where access by the public to such records ends and was not intended to restrict his rights as a member of that public. Buttressing this conclusion is 5 U.S.C. § 552a(b)(2), which provides that, although many records about an individual cannot be disclosed under the Privacy Act without the individual's consent, if disclosure is called for under the FOIA, no consent need be obtained. *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed Reg. 28,948, 28,954 (July 9, 1975). This provision, like the legislative history, indicates that the Privacy Act is not to be used to block disclosures required by the more general Freedom of Information Statute.

The court therefore concludes the material covered by the Privacy Act exemptions do not, without more, fall within exemption 3 of the Freedom of Information Act, 5 U.S.C. § 552(b)(3), which protects documents "specifically exempted from disclosure by statute . . . ." While it is true that there is some tension between the two statutes, and that the literal wording of exemption 3 can be read to include the Privacy Act, the court cannot ignore the legislative history and the general structure of these laws.

*Reported at* 615 F.2d at 689–90 n.2.

## CONCLUSION

For the foregoing reasons, we hold that section (j)(2) of the Privacy Act is not a FOIA Exemption 3 statute. Therefore, the decision of the district court is *reversed* and the case is *remanded* so that the court may consider access to the documents in question under other applicable sections of FOIA.

*Reversed and Remanded.*